IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD M. SUPINSKI, JR., | : | CIVIL ACTION NO. 3:CV-06-0793 |
| | : | |
| Plaintiff | : | (Judge Vanaskie) |
| | : | |
| v. | : | |
| | : | |
| UNITED PARCEL SERVICE, INC., et al., | : | |
| | : | |
| Defendants | : | |

MEMORANDUM

This disability discrimination/retaliation action comes before the Court on objections

of Plaintiff Edward M. Supinski, Jr., to a Magistrate Judge's Report and Recommendation

proposing that summary judgment be awarded Defendants.  Having carefully reviewed the

record *de novo* and given plenary consideration to the parties' contentions, the Court, as a

matter of law, finds that (a) Mr. Supinski is unable to show that his shoulder impairment

substantially limits one or more of his major life activities; (b) none of the named Defendants

took adverse employment action against him in retaliation for his request for an

accommodation of his shoulder impairment; and (c) the individual Defendants, Cathy Cline

and Tracy Newcomer, did not take any actions against Plaintiff in violation of the

Pennsylvania Human Relations Act (PHRA), 43 Pa. Cons. Stat. §§ 951, *et seq.*  The Court

also finds, however, that Mr. Supinski has presented sufficient evidence to warrant a jury

trial on the question of whether Defendant United Parcel Service, Inc. (UPS) regarded

Plaintiff as disabled and violated his rights under the Americans with Disabilities Act (ADA),

42 U.S.C. §12101, *et seq.*, and the PHRA by refusing to consider him for any available position at the local UPS facility.

## I.  BACKGROUND

Plaintiff began working for UPS in 1979.  In October of 2000, while employed as a full time Package Car Driver for UPS, Mr. Supinski sustained a work-related massive cuff tear in his right shoulder.  As a result, he underwent surgery and a period of physical therapy.

On October 4, 2001, Mr. Supinski's attending physician, Dr. Shawn Hennigan, released Mr. Supinski to return to work with the following "permanent" restrictions: "Seventy pounds lifting limit to waste level, twenty-five pounds lifting limit to shoulder level, twenty pounds lifting limit over head." (Dkt. Entry 38-6 at 47.)[1]  Mr. Supinski thereafter sought to return to work with UPS, either in his capacity as a Package Car Driver with appropriate accommodations for his physician-imposed restrictions or in some other position within his physical limitations.

In accordance with UPS protocol for processing ADA accommodation requests, Mr. Supinski's request to return to work was forwarded by the Central Pennsylvania District

---

[1]For convenience, references to the summary judgment record will be to the document number and pagination generated by the electronic case filing system ("CM/ECF") listed at the top of each page of the documents filed by the parties, rather than to the exhibit number or deposition transcript used by the parties.

Occupational Health and Workforce Planning Managers to the appropriate Regional

Workforce Planning and Regional Occupational Health Managers.  (Dkt. Entry 55-4 at 3-4.)

Based upon the medical documentation submitted by Mr. Supinski, the UPS regional

managers determined that he was "not a qualified individual with a disability as determined

by the ADA."  (Dkt. Entry 55-4 at 5.)  By letter dated November 11, 2002, Defendant Tracy

Newcomer, the District Workforce Planning Manager, informed Mr. Supinski that, having

"carefully evaluated your request for a job-related accommodation concerning your self-

reported physical or mental condition," UPS is "unable to conclude that you are eligible for a

reasonable accommodation pursuant to the [ADA]."  (Dkt. Entry 38-6 at 21.)

Mr. Supinski thereafter filed a charge of disability discrimination with the

Pennsylvania Human Relations Commission and the Equal Employment Opportunity

Commission.  Mr. Supinski's complaint asserted that he was "being discriminated against

because of . . . disability," contending that "[t]here are jobs available that I could perform

with my restrictions."  (Dkt. Entry 38-6 at 18.)

Mr. Supinski continued to seek reinstatement as an active UPS worker after filing his

charge of discrimination.  In particular, Mr. Supinski sought employment in positions at UPS

that would not require lifting more than 70 pounds to his waste, more than 25 pounds from

his waste to his shoulders, and more than 20 pounds above his shoulders.  For example, in

November of 2003, the Business Representative for the Teamsters Local of which Mr.

Supinski is a member wrote to UPS requesting full-time inside work for Mr. Supinski.  (Dkt. Entry 47-5 at 1.)  Plaintiff pursued, without success, grievances against UPS for its failure to accommodate his lifting restrictions.  (Dkt. Entry 47-7 at 1; Dkt. Entry 47-8 at 1.)  During a workers' compensation hearing, Mr. Supinski identified specific UPS positions that he was capable of performing.  (Dkt. Entry 47-15 at 6-7.)

UPS processed at least one other request of Mr. Supinski to return to work in positions within his physical limitations through its ADA protocol.  (Dkt. Entry 38-11 at 4-5.) By letter dated September 22, 2005, Mr. Supinski was again informed:

> UPS has carefully evaluated your request for a job-related accommodation concerning your self-reported physical or mental condition.  We are writing to inform you that based upon the medical information that we have received, we are unable to conclude that you are eligible for a reasonable accommodation pursuant to the Americans with Disabilities Act.

(Dkt. Entry 38-15 at 2.)

Following exhaustion of administrative remedies, Mr. Supinski commenced this action.  An Amended Complaint, filed on March 14, 2007, contains four counts.  Count I alleges a violation of the PHRA by UPS in failing to accommodate Mr. Supinski's physical limitations and in retaliating against him for seeking an accommodation.  Count II charges UPS with wrongful discharge in retaliation for filing a workers' compensation claim, a cause of action which Plaintiff has withdrawn.  Count III asserts a violation of the ADA and the PHRA for "disability discrimination/failure to accommodate/retaliation."  Finally, Count IV

4

asserts aider and abetter liability of Defendants Cline and Newcomer under the PHRA.

Following completion of discovery, Defendants moved collectively for summary judgment.  As noted above, the Magistrate Judge to whom this matter had been referred for pretrial management recommended that the summary judgment motion be granted.  Mr. Supinski's objections to the Report and Recommendation have been briefed by the parties.  This matter is ripe for disposition.

## II.  DISCUSSION

### A. Standard of Review

Where, as here, objections to a Magistrate Judge's Report and Recommendation are filed, the court must perform a *de novo* review of the contested portions of the Report.  See, e.g., Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989)(citing 28 U.S.C. §636(b)(1)(C)).  Although review is *de novo*, the Court is permitted to "rely upon the Magistrate Judge's proposed findings and recommendations to the extent [it], in the exercise of sound discretion, deem[s] proper.  Owens v. Beard, 829 F.Supp. 736, 738 (M.D. Pa. 1993)(citing United States v. Raddatz, 447 U.S. 667, 676 (1980); Goney v. Clark, 749 F.2d 5, 7 (3d Cir. 1984)).  To trigger *de novo* review, however, the objections must be specific.  See, e.g., Goney, 749 F.2d at 6-7.  In this regard, Local Rule of Court 72.3 requires "written objections which . . . specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for those

objections."  Where only general objections are asserted, review may properly be limited to

ascertaining whether there is "clear error" or "manifest injustice" in the Report and

Recommendation.  See Shields v. Astrue, No. 3:CV-07-417, 2008 WL 4186951, at *6, 9

(M.D. Pa. Sept. 8, 2008).

In this case, Plaintiff has asserted a number of general objections that do not meet

the required standard of specificity for *de novo* review.  For instance, Objection No. 1 –  "it is

not fair that a different office of this same Court, Western District Court of PA, has allowed

plaintiffs to proceed on similar claims as Supinski" (Dkt. Entry 58 at 1) – does not provide a

cognizable basis for reviewing the Report and Recommendation.[2]  The second objection

asserted by plaintiff –  "Plaintiff objects to the R & R in its entirety," (Dkt. Entry 58 at 1) –

certainly does not warrant *de novo* review.  Nor do objections 6, 8, 10, and 11[3] offer any

_____

[2]Moreover, the fact that a class for injunctive and declaratory relief was certified in
Hohider v. United Parcel Service, Inc., 243 F.R.D. 147 (W.D. Pa. 2007), has no bearing on
this action.  First, the fact that a class for injunctive and declaratory relief purposes has
been certified is not tantamount to any showing of an entitlement to a trial on the merits in
the Western District of Pennsylvania case.  Second, the class certified in Hohider, while
perhaps encompassing Mr. Supinski, does not require a showing that the UPS employee
has a "disability" as defined by the ADA and PHRA, a central issue presented in this matter.
Finally, the plaintiffs in Hohider have brought their case as a "pattern or practice" lawsuit,
recognized in International Brotherhood of Teamsters v. United States, 431 U.S. 324
(1997), which does not use the familiar burden shifting framework used to analyze individual
ADA discrimination cases.  Id. at 192.  As pointed out by Defendants, Plaintiff in this case
has not presented a "pattern or practice" theory of liability.

[3]       6. Plaintiff objects to the R&R since it views the evidence in
           light most favorable to UPS, and believes that just because a
           company has an ADA process, somehow that makes the

basis for a plenary consideration of the record and the parties' contentions, and do not

warrant any discussion.[4]

Objections 3 through 5, 7, and 9 do, however, place in issue the findings critical to

the recommendation that summary judgment be entered in Defendants' favor.  Accordingly,

as noted above, the record has been reviewed *de novo* for purposes of determining whether

there is a genuine dispute of those facts deemed material to Plaintiff's claims under

> company's decision right, and Supinski could never be
> "regarded as disabled" because the company's ADA process,
> but yet the company has a class action against it for its
> discriminatory practices and policies in connection with disabled
> employees.
>
> 8. Plaintiff objects to the R&R, which never once tells a citizen,
> Supinski, who had faith in the judicial system to redress the
> harm caused to him  and simply force UPS to allow him to
> come back to work, why UPS would not allow Supinski back to
> work after working for the company for over 20 years.
>
> 10. Plaintiff objects to that portion of the R&R which
> recommends that Defendants' Motion for Summary Judgment
> be granted, and a citizen is denied his day in court.
>
> 11. Plaintiff objects to the fact the Court used interested
> testimony against Supinski since the Third Circuit has held that
> evidence cannot be used against a plaintiff.

(Dkt. Entry 58 at 2, 3,  4.)

[4]Mr. Supinski's counsel has been warned by another member of this Court about her proclivity to assert generalized objections to an adverse Report and Recommendation.  See Sconfienza v. Verizon, Pennsylvania, Inc., No. 3:05-cv-272, 2007 WL 1202976, at *8 n.4 (M.D. Pa. April 23, 2007), aff'd, No. 07-2498, 2008 WL 5102375 (3d Cir. Dec, 5, 2008).

governing law.  Because the gist of the summary judgment motion is that Plaintiff is unable to present evidence sufficient to warrant a trial on his claims, the entire record has been examined in the light most favorable to Mr. Supinski for the purpose of ascertaining whether there is indeed affirmative evidence sufficient to carry his burden on each of the elements of his claims.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

B.  The Disability Discrimination Claims

Only individuals with a "disability" as that term is defined by the ADA fall within its coverage.  Defendants argue that there is no evidence that Mr. Supinski has a "disability" as defined by the anti-discrimination laws.[5]

The ADA defines "disability" in three ways. First, the term "disability" encompasses "a physical or mental impairment that substantially limits one or more of the major life activities of [the claimant]."  42 U.S.C. § 12102(2)(A).  Second, "disability" is also defined to cover an

---

[5]The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment."  42 U.S.C. § 12112(a).  "Discrimination" is defined by the ADA to include a failure to make a "reasonable accommodation" to the known physical or mental impairments of a "qualified individual with a disability."  42 U.S.C. § 12112(b)(5).  Thus, as recognized by Defendants, "to establish a prima facie case of failure to provide reasonable accommodations under the ADA, an individual must prove that (1) he has a 'disability,' (2) is a 'qualified individual,' in that he can perform the essential functions of the position sought with reasonable accommodation, and (3) the employer refused to provide the accommodation." (Dkt. Entry 42 at 14.)

8

individual with "a record of such an impairment." 42 U.S.C. § 12102(2)(B).  And finally, the

ADA provides defines "disability" to include a person who is "regarded [by the employer] as

having such an impairment." 42 U.S.C. §12102(2)(C).

Mr. Supinski argues that the impairment resulting from his work-related shoulder

injury constitutes a disability in that it substantially limits one or more of his major life

activities, such as lifting or working.  He argues alternatively that UPS regards his shoulder

impairment as substantially limiting his major life activity of working.

### 1.  Actual Disability

It is undisputed that the physicians who have examined Mr. Supinski have opined

that Supinski can not perform work requiring lifting of more than seventy pounds to the

waste, more than twenty-five pounds to the shoulder, and more than twenty pounds over his

head.  It is also beyond dispute that the physicians have authorized Mr. Supinski to return to

work on a full-time basis with only those lifting restrictions.  In this regard, Dr. L. Richard

Trabulsi, a Board-Certified Orthopedic Surgeon, wrote in July of 2004:

> [Mr. Supinski] still has some shoulder dysfunction, with
> restrictive motion of a mild degree in shoulder elevation and
> internal rotation and mild-strength deficits on the right.  He is
> not fully recovered, but is sufficiently recovered to return to
> work on a full time basis with restrictions, primarily of lifting. I
> believe those restrictions are . . . lifting up to seventy pounds to
> waste level, twenty five pounds to shoulder level, and no
> overhead lifting in excess of twenty pounds.  There are no
> restrictions with respect to sitting, standing, or walking.  If his
> pre-injury job requires capacities that are in excess of those just

9

> outlined, he will not be able to return to his pre-injury job.  Mr.
> Supinski has reached a maximum medical improvement.
> Additional physical impairment and future disability are not
> anticipated.  No further medical treatment is, at this time,
> required, and none has been sought over the past year.

(Dkt. Entry 38-6 at 33.)

In Marinelli v. City of Erie, Pa., 216 F.3d 354 (3d Cir. 2000), our Court of Appeals

ruled that, as a matter of law, a medical restriction that the plaintiff was unable to do any

"heavy work greater than ten pounds" did not represent a substantial impairment of either

the major life activity of lifting or the major life activity of working.  Marinelli was applied by

my colleague, the Hon. James M. Munley, in Shaw v. Chamberlain Mfg. Corp., No. 3:05-

CV-1344, 2006 WL 2382284 (M.D. Pa. Aug. 17, 2006), to grant summary judgment in favor

of the employer in a case involving impairments from a rotator cuff injury similar to the

restrictions imposed on Supinski.  In applying Marinelli, Judge Munley explained:

> Shaw has testified that he could perform the vast majority of
> the laborer tasks at Chamberlain, and was restricted from
> performing his pre-injury job solely because it required that he
> rotate among various laborer positions, some of which required
> that he perform lifting beyond his restrictions. . . .   This does
> not constitute a substantial limitation on the major life activity of
> working . . .  Shaw has presented no evidence that all
> employers hiring laborers or manufacturers require their
> employees to lift over twenty five pounds or rotate through jobs
> that include this requirement.  Therefore, we find that Shaw has
> failed to create a genuine issue of material fact that he was
> substantially limited in his ability to work because he failed to
> demonstrate that his restrictions prevented him from working in
> a broad range of jobs or a class of jobs such as laborer or

> manufacturer.  Accordingly, we find he has failed to create a
> genuine issue of material fact that he was actually disabled.

2006 WL 2382284 at *8.

An identical conclusion is compelled here.  Mr. Supinski has testified that there are a number of jobs at UPS that he is able to perform even with the lifting restrictions imposed by the physicians.  Mr. Supinski has not presented any competent evidence that his shoulder impairment substantially limits lifting, working, or any other major life activity.  In this regard, as the Magistrate Judge observed, Mr. Supinski's testimony that he is unable to pick up children, paint, move furniture, fix rain gutters, walk the dog, do roof work, perform yard work with a wheel barrel, etc., is not sufficient to create a jury question on the issue of whether the shoulder impairment substantially limits a major life activity.  As explained in Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 202 (2002), changes resulting from an injury, such as "avoiding sweeping [quitting dancing, and reducing time spent playing with children], garden[ing], and driv[ing] long distances . . . [do] not amount to such severe restrictions in the activities that are of central importance to most people's lives that they establish a manual task disability as a matter of law."  Accordingly, that part of the Report and Recommendation concluding that, as a matter of law, Mr. Supinski does not have an impairment that substantially limits a major life activity will be adopted.[6]

---

[6]On October 20, 2008, Plaintiff submitted as a "supplement" to his Objections to the Report and Recommendation the 2008 Amendments to the ADA.  Plaintiff advanced no

11

2.  "Regarded as Disabled"

Plaintiff alternatively argues that he falls within the coverage of the ADA because UPS regards his shoulder impairment as substantially limiting the major life activity of working.  UPS asserts that its determination that Mr. Supinski twice was found to not have a "disability" within the ADA's definition of that term precludes, as a matter of law, a determination that it regarded Mr. Supinski as having any substantially limiting impairment. Plaintiff responds that the apparent application of a "100% healed" policy, meaning that UPS will not consider him for any position until he has been released for work without <u>any</u> restriction, is sufficient evidence to defeat summary judgment on the "regarded as disabled" issue.

"There are two apparent ways in which individuals may fall within [the 'regarded as

---

argument as to how the amendments affect the analysis of his claims.  Significantly, however, Section 8 of the 2008 ADA Amendments Act establishes its effective date as January 1, 2009, suggesting that the amendments are not applicable here.  In this regard, it appears that every court that has addressed the issue has concluded that the 2008 Amendments cannot be applied retroactively to conduct that preceded its effective date. <u>See</u>, <u>e.g.</u>, <u>Kiesewetter v. Caterpillar, Inc.</u>, No. 08-2140, 2008 WL 4523595, at *1 (7th Cir. Oct. 9, 2008); <u>Walstrom v. City of Altoona</u>, Civil Action No. 3:2006-81, 2008 WL 5411091, at *5 (W.D. Pa. Dec. 29, 2008); <u>Hays v. Clark Products, Inc.</u>, No. 1:07-CV-328, 2008 WL 5384300, at *6 (S.D. Ind. Dec. 18, 2008); <u>Levy ex rel. Levy v. Hustedt Chevrolet</u>, Civil Action No. 05-4832, 2008 WL 5273927at *3 n.2 (E.D. N.Y. Dec. 17, 2008); <u>Gibbon v. City of New York</u>, No. 07-Civ-6698, 2008 WL 5068966, at *5 n.57 (S.D. N.Y. Nov. 25, 2008).  As explained in <u>Knox v. City of Monroe</u>, Civil Action No. 07-606, 2008 WL 5157913, at *5 n.10 (W.D. La. Dec. 9, 2008), "the amendments to the ADA are not effective until January [1], 2009, and the Court must use the laws and interpretations of those laws in effect at the time of the complained-of-actions."

disabled'] statutory provision: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities." Sutton v. United Airlines, 527 U.S. 471, 489 (1999).

Plaintiff advances the second approach here, asserting that UPS regards him as substantially limited in the major life activity of working.  Of course, Plaintiff cannot withstand summary judgment on this issue by pointing to evidence that UPS would not allow him to return to the position he held at the time of his injury.  Instead, he must show that UPS perceived him to be "unable to work in a broad class of jobs." Id. at 491.  Plaintiff asserts that the application of a *de facto* "100% healed" policy to preclude him from returning to UPS in any capacity suggests that UPS essentially regards a worker with a physical impairment as substantially limited in the major life activity of working.

Courts have found that a "100% healed" rule, whether or not formally adopted by an employer, may suffice to create a jury question on whether the employer regards an impaired employee as substantially limited in the major life activity of working.  For example, in Henderson v. Ardco, Inc., 247 F.3d 645 (6th Cir. 2001), the court reversed the entry of summary judgment in favor of an employer that purportedly applied a "100% healed" rule in its work place.  Ms. Henderson had injured her back and was out of work for several months.  She returned to work with a doctor's note that provided that she was not to stoop

13

or bend, and was not to lift more than 25 pounds frequently.  Ms. Henderson was not

allowed to return to work, and was told by the plant manager that "'company policy is . . .

you have to be 100% to work here." Id. at 647.  In determining that the plaintiff was entitled

to a jury trial, the court wrote:

> On summary judgment . . . the importance of the 100% rule is its role in
> determining the threshold issue of perceived disability.  Where the 100% rule
> is applied to mildly impaired persons to exclude them from a broad class of
> jobs, it may be treating them as disabled even if they are not, thereby
> qualifying them for protection under the ADA and parallel statutes, and
> activating the individual assessment rule.  The variability of the impairment-
> relevant job requirements within the business of applying the 100% rule is
> thus important, because it indicates the breadth of the class the employer
> perceives when the employer applies the rule.
>
> We are not . . . wholly at sea as to the subjective state of mind of the
> employer regarding the substantiality of the class implicated by denying the
> plaintiff employment.  Plaintiff has brought forward evidence that the
> defendant perceived there was no job for her at the Ardco plant, and this
> gives an indication of the employer's perception about her suitability for a
> class of relevantly similar employment.  Further factual inquiry must
> determine whether the range of essential jobs at the plant, in actuality as well
> as on paper, was roughly equivalent to the class of 'manufacturing jobs.'  If, in
> fact, Ardco knew that all jobs in the plant had significant lifting, bending, or
> stooping requirements beyond those consistent with manufacturing jobs
> generally extant in the Elkton area, contra their written descriptions, then their
> actions may be permissible.  However, plaintiff seems to have done enough
> to throw this issue into doubt.

Id. at 653-54 (footnote and citations omitted).

Similarly, Mr. Supinski has done enough to throw into doubt the perceived disability

issue in this case.  He has presented evidence that he sought several positions at the local

14

UPS facility that would seem to be less physically demanding than the position he held at the time of his injury.  For instance, according to the UPS job descriptions submitted as part of the record in this matter, the position of "car washer" would involve lifting no more than fifty pounds.  (Dkt. Entry 38-16 at 28.)  Plaintiff applied for this position.  (Dkt. Entry 47-8 at 1.)  In this context, the statement made by an employee of UPS to Mr. Supinski after he sought an accommodation that "we don't bring cripples back," (Dkt. Entry 58-2 at 1), could support an inference that UPS regarded even employees with mild impairments such as Mr. Supinski to be incapable of performing a broad class of jobs.  This evidence is sufficient to defeat summary judgment on the issue of whether UPS regarded Mr. Supinski as disabled.[7]

See Johnson v. Paradise Valley Unified School Dist., 251 F.3d 1222, 1226 (9th Cir. 2001)

---

[7]An alleged "100% healed" rule at UPS was also implicated in Jones v. UPS, Inc., 502 F.3d 1176 (10th Cir. 2007).  Unlike the instant matter, Mr. Jones was believed by UPS to be ineligible for jobs that he was capable of performing within the lifting restrictions imposed by his doctor as a result of provisions of the applicable collective bargaining agreement.  Thus, application of the rule in Jones could not suggest that UPS regarded the employee as disabled from working.  UPS has not argued in this case that positions sought by Mr. Supinski within the lifting restrictions imposed on him are unavailable due to the applicable collective bargaining agreement.  Moreover, Jones is significant in recognizing that evidence of a 100% healed policy "is potentially relevant not only to the alleged unlawful motivation behind UPS's refusal to return Mr. Jones to work, but also to a determination of whether UPS regarded him as disabled." Id at 1188.  The Court in Jones further recognized that "when an employer is hiring for a broad range of jobs in the relevant geographical area, its decision not to offer an employee one of a broad range of company jobs may be relevant evidence of its perception of that employee's abilities."  In Jones, there was no evidence that UPS had applied a 100% healed policy to exclude him from a broad range of jobs.  In this case, by way of contrast, the evidence is sufficient to at least create an issue of fact on this point.

(evidence was sufficient to support jury verdict that school district regarded groundskeeper as disabled where the District had refused to consider plaintiff for 13 different maintenance and grounds keeping jobs and there was "testimony that the District enforced a policy of refusing to accept 'partial releases' for employees in any job category   . . . ."); Allen v. Dearfield Mfg. Inc., 424 F. Supp. 2d 987, 1001 (S.D. Ohio 2006) (employer not entitled to summary judgment on question of whether employer regarded plaintiff as disabled where plaintiff was told not to apply for any job position until he was released to work without restrictions); Warmsley v. New York City Transit Authority, 308 F. Supp. 2d 114, 120-21 (E.D. N.Y. 2004) (holding that the New York City Transit Authority regarded as substantially limited in the ability to work a broad range of jobs any employee who had taken a medical leave and had not obtained a release to work without restrictions).  Thus, the Magistrate Judge's Report and Recommendation will not be adopted to the extent that it found, as a matter of law, that Plaintiff is unable to show that UPS regarded him as having an impairment that substantially limited the major life activity of working.

C.  The Retaliation Claim

_____Mr. Supinski's claim of retaliation is based upon the failure to accommodate his impairment by refusing to place him in a position that would not require him to exceed his lifting restrictions.  Thus, the retaliation claim is based upon the same conduct that supports the alleged discrimination claims.  Although requesting a reasonable accommodation may

16

constitute protected activity and the ADA protects even individuals who are not disabled from retaliation, the mere denial of the accommodation claimed to violate the substantive anti-discrimination provisions of the ADA simply cannot support a retaliation claim.  See Lucas v. WW Grainger, Inc., 257 F3d 1249, 1261 (11th Cir. 2001).

        In this regard, Mr. Supinski's retaliation claim is very similar to the type of retaliation claim rejected on a summary judgment motion in Williams v. Philadelphia Housing Authority, 230 F. Supp. 2d 631, 639 - 40 (E.D. Pa. 2002), aff'd in part and rev'd in part on other grounds, 380 F.3d 751 (3d Cir. 2004).  Mr. Williams, like Mr. Supinski in this case, claimed retaliation as the motivation for denying his request for a transfer to a different position as an accommodation for his impairment.  As in this case, the alleged adverse employment action – the failure to approve a transfer – was alleged to be "in retaliation" for the request for the transfer.  The court found that under those circumstances a plaintiff could not show that the decision to deny the transfer was motivated by a desire to retaliate against the employee for requesting the transfer.  Id. at 639-40.

        If an employee is not entitled to a reasonable accommodation under the law, the denial of the requested accommodation simply cannot support a retaliation claim.  If, however, the employee is entitled to the reasonable accommodation refused by the employer, then a disability discrimination claim has been established, not a retaliation claim.  Accordingly, Defendants are entitled to summary judgment on the retaliation claim.

D.  The Individual Liability Claims

It has been recognized by this and other courts that individuals may be held liable under the PHRA, which forbids "any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice . . . ." Holocheck v. Luzerne County Head Start, Inc., 385 F. Supp. 2d 491, 496-97 (M.D. Pa. 2005).  "An individual supervisory employee can be held liable under an aiding and abetting accomplice liability theory . . . for [her] own direct act of discrimination or for [her] failure to take action to prevent further discrimination by an employee under [her] supervision." Davis v. Levy Angstreich, Finney, Baldante, Rubenstein & Coren, P.C., 20 F. Supp. 2d 885, 887 (E.D. Pa. 1998).

Mr. Supinski has not shown any direct act of discrimination by Ms. Cline or Ms. Newcomer.  Nor has he presented evidence of any failure on their part to take action to prevent discrimination by an employee under their supervision.  He simply asserts that Ms. Cline was the UPS nurse in charge of his case, and contends, without substantiation, that she "could have given him a job with accommodation or set up a meeting with him and UPS to discuss it." (Dkt. Entry 49 at 13, citing Supinski Deposition Transcript at 274.)  As to Ms. Newcomer, Mr. Supinski claims, again without substantiation, that "she should have been able to find him an accommodation," and that "she should have gone through the paperwork

and been able to find mistakes UPS had made and corrected them." (Dkt. Entry 49 at 16-17, citing Supinski Deposition Transcript at 278.)

UPS, on the other hand, has submitted uncontradicted evidence that neither Cline nor Newcomer exercised decisionmaking authority with respect to Mr. Supinski's request for an accommodation.  In this regard, Ms. Newcomer testified that she was a District Workforce Planning Manager for UPS.  Her responsibility was to submit requests for accommodation to the UPS Regional Workforce Planning Manager and Regional Occupational Health Manager, which she did.  (Dkt. Entry 55-3 at 7-8.)  She further testified that ADA accommodation requests were decided by the regional managers.  (Dkt. Entry 55-3 at 11.)  Consistent with her testimony are memoranda submitting Mr. Supinski's ADA request to the Regional Workforce Planning Manager and Regional Occupational Health Manager.  (Dkt. Entry 55-4 at 3-4.)  Significantly, the ADA protocol followed by UPS, as described in Hohider, 243 F.R.D. at 172-73 (a case upon which Plaintiff relies heavily), indicates that it is the Regional Workforce Planning Manager and Regional Occupational Health Manager who "are responsible for evaluating the assembled medical information to determine whether the individual has a condition that may be a disability under the ADA."  It is the responsibility of the District Workforce Planning Manager to notify the employee of the decision made by the regional decisionmakers.  Id. at 173.  It is thus clear in this case, that neither Cline nor Newcomer was in any position to decide Mr. Supinski's request for an

19

accommodation.  Under these circumstances, there is no basis for holding either Cline or Newcomer individually liable for alleged violations of the PHRA.  See Allen v. Verizon Pennsylvania, Inc., 418 F. Supp. 2d 617, 633 (M.D. Pa. 2005).  Therefore, judgment will be entered in their favor.

III.  CONCLUSION

For the reasons set forth above, the Magistrate Judge's Report and Recommendation (Dkt. Entry 57) will be adopted in part, and the Joint Motion for Summary Judgment (Dkt. Entry 37) will be granted in part.  Specifically, summary judgment will be granted on Plaintiff's claims of retaliation, the alleged individual liability of Defendants Cline and Newcomer, and disability discrimination premised upon his assertion that his shoulder impairment substantially limited a major life activity.  Summary judgment, however, will be denied on the claim that UPS regarded him as disabled and refused to provide him with a reasonable accommodation to allow him to return to work.  An appropriate Order follows.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EDWARD M. SUPINSKI, JR.,     :     CIVIL ACTION NO. 3:CV-06-0793
                       :
          Plaintiff     :     (Judge Vanaskie)
                       :
     v.                   :
                       :
UNITED PARCEL SERVICE, INC., et al., :
                       :
         Defendants     :

ORDER

NOW, THIS 16th DAY OF JANUARY, 2009, for the reasons set forth in the

foregoing Memorandum, IT IS HEREBY ORDERED THAT:

1.  The Report and Recommendation of the Magistrate Judge (Dkt. Entry 57) is

ADOPTED IN PART.

2.  Defendants' Joint Motion for Summary Judgment is GRANTED IN PART AS

FOLLOWS:

A. Plaintiff's claims in Count IV against Defendants Cline and Newcomer are

DISMISSED, and the Clerk of Court is directed to enter judgment in favor of Defendants

Cline and Newcomer.

B.  Plaintiff's claims of retaliation asserted in Counts I and III of the Complaint

are DISMISSED, and the Clerk of Court is directed to enter judgment in favor of Defendant

United Parcel Service, Inc. on Plaintiff's claims of retaliation.

C.  Plaintiff's claim that he falls within the definition of "disability" set forth in

the Americans with Disabilities Act and the Pennsylvania Humans Relations Act because he

is substantially limited in a major life activity is DISMISSED.

       D.  The motion for summary judgment on the ground that Plaintiff is unable to

present evidence that he is regarded as disabled is DENIED.

       E.  A telephonic scheduling conference will be held on February 19, 2009, at

10:00 a.m.  Plaintiff's counsel is responsible for making the arrangements for the

conference call.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge

2