IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EDWARD M. SUPINSKI, JR.,              :         CIVIL ACTION NO. 3:CV-06-0793
                                      :
              Plaintiff               :         (Judge Vanaskie)
                                      :
       v.                             :
                                      :
UNITED PARCEL SERVICE, INC.,          :
                                      :
              Defendant               :

MEMORANDUM

Defendant United Parcel Service, Inc. ("UPS") has moved for summary judgement a

second time in these consolidated cases charging disability discrimination in employment.  Its

first motion was denied because the evidence of record disclosed a genuine dispute on the

issue of whether Plaintiff Edward M. Supinski, Jr.'s physical limitations were regarded by UPS

as rendering him disabled within the purview of the Americans with Disabilities Act ("ADA"), 42

U.S.C. § 12101, *et seq.*[1]  Defendant's second summary judgment motion argues, <u>inter</u> <u>alia</u>,

that, as a matter of law, Mr. Supinski cannot show that he was able to perform the essential

functions of any position available at the UPS facility where he had been employed after

_____

[1] For the convenience of the reader of this Memorandum opinion in electronic format,
hyperlinks to the Court's record and to authority cited herein have been inserted.  The Court
accepts no responsibility for, and does not endorse, any product, organization, or content at
any hyperlinked site, or at any site to which that site might be linked.  The Court accepts no
responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink
ceases to work or directs the user to some other site does not affect the opinion of the Court.

sustaining a serious shoulder injury. After careful consideration of all the evidence, I find that Plaintiff is unable to show that he can perform, with or without reasonable accommodation, the essential functions of the positions he has sought at UPS since sustaining his shoulder injury. Accordingly, UPS' second summary judgment motion will be granted.

I. BACKGROUND

A. Factual Background

Mr. Supinski began working for UPS in 1979 as a Car Washer, and eventually occupied the position of Package Car Driver at the UPS facility in Taylor, Pennsylvania. UPS defines the physical requirements of this position as including the ability to "[l]ift, lower, push, pull, leverage and manipulate equipment and/or packages weighing up to 70 pounds" and "[a]ssist in moving packages weighing up to 150 pounds." (UPS Essential Job Functions, Dkt. Entry 38-16, at 30.)

In October of 2000, Mr. Supinski sustained a work-related massive cuff tear in his right shoulder. As a result, he underwent surgery and a period of physical therapy. On October 4, 2001, Shawn P. Hennigan, M.D., a General Orthopaedic Specialist, approved Mr. Supinski to return to work under the following permanent restrictions: "Seventy pound lifting limit to waist level, twenty-five pound lifting limit to shoulder level, twenty pound lifting limit overhead." (Hennigan Report, Dkt. Entry 81-2.) It is undisputed that these restrictions prevented Mr. Supinski from resuming his position of Package Car Driver. It is also undisputed that UPS did not approve Mr. Supinski's return to employment in any capacity.

2

On March 22, 2006, following exhaustion of administrative remedies, Mr Supinski commenced the first of two disability discrimination cases. The first action, removed from the Court of Common Pleas of Lackawanna County and docketed in this Court No. 3:06-CV-00793 ("*Supinski I*"), concerned the refusal of UPS to accept Mr. Supinski for various job openings that existed prior to 2006.

Mr. Supinski's efforts to return to UPS continued after the commencement of *Supinski I.* In July, 2006, Mr. Supinski informed Robert Oakes, Business Manager for Teamsters Local 229, the union to which Mr. Supinski belonged, that there were openings for Car Washer/Unloader positions at the UPS Taylor facility and that he was capable of performing the jobs.[2] (Oakes Decl., Dkt. Entry 77-2, ¶ 8.) Sometime that month, Mr. Supinski bid for a Car Washer/Unloader position. (Grievance, Dkt. Entry 81-7; Supinski Dep., Dkt. Entry 77-2, at 23.) Mr. Supinski claims he was "the number one seniority person" to bid for the Car Washer/Unloader position but UPS gave the job to two persons with less seniority." (Grievance, Dkt. Entry 81-7.) Mark Johnson, District Labor Manager for the Central Pennsylvania District for UPS, responsible for administering the collective bargain agreement at the Taylor facility, testified that he discussed Mr. Supinski's request for the Car

---

[2] Mr. Oakes stated he wrote a letter to Mr. Supinski on June 15, 2005, requesting that Mr. Supinski provide him with a list of jobs he was capable of performing with his medical restrictions. (Oakes Decl., Dkt. Entry 77-2, at 35, ¶ 6.) According to Mr. Oakes, Mr. Supinski never responded to the 2005 letter. (Id. at 36, ¶ 7.)

Washer/Unloader position with Mr. Oakes. (Johnson Decl., Dkt. Entry 77-2, ¶ 15.) They

agreed that Mr. Supinski would be entitled to the position if he provided medical documentation

establishing he was able to fulfill the essential functions for that combination position. (Id. at

43, ¶ 16; Oakes Decl., ¶ 9.)

Albert D. Janerich, M.D., in a note dated September 20, 2006, stated that Mr. Supinski

was "capable and able to return to work on the local sort/carwash job he bid." (Janerich Note,

Dkt. Entry 81-8.) At his deposition, Mr. Supinski admitted that he had not provided Dr. Janerich

with "the exact lifting requirements" for the position, but only said he had previously performed

the Car Washer position. (Supinski 2009 Dep., Dkt. Entry 77-2, at 27.) Mr. Oakes informed

Mr. Supinski that the note was not sufficient to show he could perform the vacant Car

Washer/Unloader position. (Oakes Decl., ¶ 11.) Mr. Oakes stated that Mr. Supinski did not

provide him with any further documentation. (Id. at ¶ 12.)

UPS contends that Mr. Supinski could not satisfy the physical requirements of the

position for which he had bid. According to John Romeo, the Manager of the Pocono Center of

the UPS Taylor facility, "[a]ll carwash positions at the Taylor facility are combination full-time

positions involving at least one additional task requiring the same lifting requirements as

package car drivers, feeder drivers and loaders, and have been since implementation of the

1997 collective bargaining agreement between UPS and Teamsters Local 229." (Romeo Decl.,

Dkt. Entry 77-2, ¶ 4.) Mr. Romeo further stated that from August 2004 to May of 2009, the

only vacancies at the Taylor facility, which employs about 200 persons, were for "package car drivers, tractor trailer/feeder drivers and combination carwash/unload positions." (Id. at ¶ 7.) Mr. Johnson likewise stated that "[a]ll carwash positions at the Taylor facility are combination full-time positions involving at least one additional task requiring lifting, and have been since implementation of the 1997 collective bargaining agreement between UPS and Teamsters Local 229."[3] (Johnson Decl., Dkt. Entry 77-2, at ¶ 19.) Jason Holgate, currently a Pre-load and Yard Jockey at the UPS Taylor facility, stated he was previously a combination Car Washer and Unloader at the Taylor facility. (Holgate Decl., Dkt. Entry 77-2, at ¶ 3.) He further stated that, since 1997, all Car Washer positions at the Taylor facility have been full-time positions, which involved unloading or local sort. (Id. at ¶ 5.)

Persons holding the positions of Sorter, Unloader/Loader, Driver, and Feeder Driver at UPS, according to the UPS Essential Job Functions document, are required to "[c]ontinuously lift and lower, push/pull packages that occasionally weigh up to 70 pounds each;" "[l]ift packages to heights above the shoulder and lower to foot level as appropriate;" and "[a]ssist in moving packages weighing up to 150 pounds." (Essential Job Functions, Dkt. Entry 38-16.) A Loader/Unloader is additionally required to "[l]ift and lower packages while 'unloading' at a rate of 700 to 1300 per hour and while 'loading' at a rate of 500 to 1200 packages per hour." (Id.)

---

[3]Mr. Johnson further testified that Feeder Driver positions (tractor-trailer positions) required the same lifting requirements as a Package Car Driver. (Johnson Decl., Dkt. Entry 77-2, at ¶ 21.)

The Car Washer position requires the ability to "[l]ift, lower, push, pull and carry wash equipment weighing up to 50 pounds." (Id.)

Nicholas D. Coyer occupied a Feeder position at UPS prior to August of 2002. (Coyer Dep., Dkt. Entry 81-12, at 4.) He was required to unload and load his truck as part of his responsibilities. He testified in Mr. Supinski's workers' compensation proceedings that he was required to lift about 75 pounds over his waist, and would lift up to 50 pounds above his shoulders. Mr. Supinski was restricted to lifting no more than 25 pounds to shoulder height and no more than 20 pounds overhead. Although Mr. Coyer said that the actual physical demands of his job as Feeder exceeded these limits, he also testified that he could have performed his duties as Feeder within the restrictions imposed on Mr. Supinski.

Elizabeth Foley, a Clerk/Car Washer for UPS, testified in Mr. Supinski's workers' compensation case that UPS has had part-time Car Washers since 2001. (Foley Dep., Dkt. Entry 81-11, at 3.) She also stated that the Car Washer Position does not require any heavy lifting and that generally Car Washers are not required to load and unload trucks. She also testified, however, that as a combined Clerk/Car Washer, she could be required to load and unload trucks.

Mr. Supinski believes that the Feeder position (tractor-trailer) does not require heavy lifting. (Supinski Dep. (Workers' Comp.), Dkt. Entry 81-15, at 2.) Although he acknowledged that the position required unloading trailers, he thought he would be able to perform the position

6

with his limitations.  He admitted, however, that he had never performed that job.  Mr. Supinski also thought he could perform the Car Washer position.  In his affidavit submitted in opposition to the summary judgment motion, he stated that "[t]here is no essential functions of the Car Washing position that I could not do." (Supinski Aff., Dkt. Entry 83-2, ¶ 10.)  As noted above, Mr. Supinski had performed the Car Washer position when he began working for UPS in the late 1970's. (Supinski Dep. (Workers' Comp.), Dkt. Entry 81-15, at 5.)

### B.  Procedural History

On March 14, 2007, Plaintiff filed an Amended Complaint in *Supinski I*, asserting the following Counts:  (1) failure to accommodate and retaliation under the PHRA against UPS; (2) wrongful discharge against UPS;[4] (3) failure to accommodate and retaliation under the ADA and PHRA against UPS; and (4) an ongoing pattern of discrimination in violation of the PHRA against UPS and two UPS employees.  Mr. Supinski contended that he was covered by the ADA and PHRA because either his physical condition substantially impaired his ability to engage in a major life activity, or UPS regarded him as having such a condition.

On July 30, 2007, UPS and the individual Defendants filed a Joint Motion for Summary Judgment.  (Dkt. Entry 37.)  In a Report and Recommendation filed on February 13, 2008, the Magistrate Judge to whom *Supinski I* had been referred for pretrial management proposed that the summary judgment motion be granted.  (Dkt. Entry 57.)  On February 25, 2008, Plaintiff

---

[4] Plaintiff voluntarily dismissed his wrongful discharge claim.  (Dkt. Entry 49, ¶ 3.)

submitted objections to the Report and Recommendation. Two days later, Plaintiff commenced his second disability discrimination action, docketed in this Court to No. 3:08-CV-00371 (*Supinski II*), complaining that UPS had wrongfully failed to place him in positions that had become available after 2005. The assigned Magistrate Judge stayed litigation in *Supinski II* pending the outcome of the summary judgment motion in *Supinski I*.

By Memorandum and Order dated January 16, 2009, I adopted in part the Magistrate Judge's Report and Recommendation in *Supinski I*. (Mem. & Ord., Dkt. Entry 62.) As to the question of whether or not Mr. Supinski was actually disabled, I found that, "as a matter of law, Mr. Supinski does not have an impairment that substantially limits a major life activity. . . ." (Id. at 11.) Likewise, as to Mr. Supinski's retaliation claim, I found that Mr. Supinski could not show that UPS retaliated against him for requesting that his impairments be accommodated by reinstatement to a position less demanding than Car Package Driver. (Id. at 17.) Summary judgment was granted on the claims against the individual Defendants because Mr. Supinski failed to show any direct discrimination on their part and neither of them exercised decision making authority with respect to Mr. Supinski's requests for an accommodation. (Id. at 18.) As to the "regarded as disabled" claim against UPS, however, I found:

> Mr. Supinski has done enough to throw into doubt the perceived disability issue in this case. He has presented evidence that he sought several positions at the local UPS facility that would seem to be less physically demanding than the position he held at the time of his injury. For instance, according to the UPS job descriptions submitted as part of the record in this matter, the position of "car washer" would involve lifting no more than fifty pounds. Plaintiff applied for this

8

position.  In this context, the statement made by an employee of UPS to Mr. Supinski after he sought an accommodation that "we don't bring cripples back," (Dkt. Entry 58-2 at 1), could support an inference that UPS regarded even employees with mild impairments such as Mr. Supinski to be incapable of performing a broad class of jobs.  This evidence is sufficient to defeat summary judgment on the issue of whether UPS regarded Mr. Supinski as disabled.

(Id. at 14-15.)[5]

On February 17, 2009, UPS moved to consolidate *Supinski I* and *Supinski II*.  Following a telephonic conference held on February 19, 2009, the motion to consolidate was granted, discovery was directed to be completed by April 30, 2009, and the parties were granted leave to file dispositive motions by May 15, 2009.  (Dkt. Entry 68.)  UPS timely filed its second summary judgment motion (Dkt. Entry 77.)  Following briefing, oral argument was heard on August 14, 2009.

## II.  DISCUSSION

### A.  Summary Judgment Standard

"The usual and primary purpose of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."  Powers v. Tweco Products, Inc., 206 F. Supp. 2d 1097, 1101 (D. Kan. 2002).  A party who shows that there is no genuine dispute as to any fact material to the outcome of the proceeding and that the opposing party cannot prevail on any of

---

[5] The January 16, 2009 ruling did not address any other aspect of a *prima facie* case of disability discrimination.  In particular, it did not broach the subject of whether Plaintiff was capable of performing the essential functions of any positions that were actually available at the Taylor facility.

the pleaded claims is entitled to avoid the burden and expense of a trial. See Fed. R. Civ. P.

56. An issue is only genuine "if the evidence is such that a reasonable jury could return a

verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Although doubts as to the existence of a genuine issue of material fact must be resolved

against the moving party, the non-moving party must present affirmative evidence from which a

jury might return a verdict in the non-moving party's favor, id. at 256-57, and the non-moving

party cannot discharge that burden by conclusory and unsubstantiated assertions. See Schoch

v. First Fid. Bancorporation, 912 F. 2d 654, 657 (3d Cir. 1990). Accordingly, summary

judgment is to be entered "against a party who fails to make a showing sufficient to establish

the existence of an element essential to that party's case and on which that party will bear the

burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

      B.  "Qualified Individual Under the ADA"

An element essential to a plaintiff's case in a law suit charging disability discrimination in

employment is that the plaintiff is a "qualified individual with a disability." See Turner v.

Hershey Chocolate USA, 440 F.3d 604, 611 (3d Cir. 2006). I have already found that there is a

genuine issue of fact material to the question of whether UPS regarded Mr. Supinski as having

a disability within the purview of the ADA, thus precluding summary adjudication of the disability

prong of a *prima facie* case of discrimination.[6]

UPS argues that the additional evidence presented in support of its second summary judgment motion establishes that Mr. Supinski cannot show that he is a "qualified individual" with respect to any positions that were available at the UPS Taylor facility.  Under the ADA, employers are prohibited from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to . . . the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  To be a "qualified individual" under the ADA, an individual must (i) meet the necessary prerequisites for the job, such as education,

---

[6] UPS urges reconsideration of my conclusion that it was not entitled to summary judgment on the record presented in support of its first summary judgment motion.  The request is both untimely and unavailing.  Citing McDonald v. Commonwealth of Pennsylvania, 62 F.3d 92, 97 (3d Cir. 1995), UPS first erroneously asserts that summary judgment should be awarded in its favor because there is no obligation to accommodate a plaintiff who shows that he was regarded as disabled by the employer.  Although there is evidently a split of authority on this question among the Courts of Appeals, (compare Katz v. City Metal Co., 87 F.3d 26, 33 (1st Cir. 1996) (recognizing a duty to accommodate a "regarded as" disabled employee), with Kaplan v. City of North Las Vegas, 323 F.3d 1226, 1231-33 (9th Cir. 2003)(rejecting a duty to accommodate a "regarded as" disabled employee)), the Third Circuit has ruled that employees who are "regarded as" disabled are entitled to reasonable accommodation in the same manner as are those who are actually disabled.  See Williams v. Philadelphia Hous. Auth. Police Dept., 380 F.3d 751, 773-74 (3d Cir. 2004).  Moreover, contrary to the contention advanced by UPS, summary judgment on the "regarded as" issue was not denied solely because of the "stray remark" attributed to a non-decisionmaker.  Instead, the record as a whole, when considered in a light most favorable to Mr. Supinski, could support an inference that UPS regarded any person who was less than 100% healed incapable of performing a broad range of jobs and this perception could satisfy the "regarded as" aspect of the statute's definition of disability.  Nothing presented in support of the second summary judgment warrants a different conclusion.

experience, training, and the like; and (ii) be able to perform the essential job functions, with or without reasonable accommodation. 42 U.S.C. 12111(8).[7] "[T]he burden is on the employee to prove that he is 'an otherwise qualified individual." Gaul v. Lucent Technologies, Inc., 134 F.3d 576, 580 (3d Cir. 1998) (citing Shiring v. Runyon, 90 F.3d 827, 832 (3d Cir. 1996)). As explained in Conneen v. MBNA America Bank, 334 F.3d 318, 326-29 (3d Cir. 2003):

> In order to establish that a plaintiff is "qualified" under the ADA, the employee must show that he/she "satisfies the requisite skill, experience, education and other job-related requirements of the employment position that such individual holds or desires." Skerski v. Time Warner Cable Co., 257 F.3d 273, 278 (3rd Cir.2001). If the plaintiff is able to make that showing, he/she must then establish that "with or without reasonable accommodation, [he/she] can perform the essential functions of the position held or sought." Id.

Mr. Supinski does not dispute that he is unable to perform the essential functions of Car Package Driver, the position he held at the time of his injury. In fact, Mr. Supinski admits that he is permanently disabled from performing his pre-injury job as Car Package Driver. (Pl.'s SMF, Dkt. Entry 82, at ¶ 23.) His claims concern the failure of UPS to bring him back to some other position. He bid on the Car Washer/Unloader job. He also claims he sought to fill a vacant Feeder Driver position. UPS does not suggest that Mr. Supinski cannot show that he has the experience, skill, or education for the Car Wash/Unloader position, but notes that he does not possess the requisite Commercial Drivers License ("CDL") for the Feeder Driver

---

[7] The same analytical framework governs claims under both the ADA and PHRA. Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir.1996).

position. UPS also contends that, in any event, Plaintiff cannot satisfy the physical demands of either position. Thus, the question is whether there is a genuine issue of material fact regarding Mr. Supinski's ability to perform the essential job functions of the Car Washer/Unloader and Feeder Driver positions with or without reasonable accommodation.[8]

       1. "Essential Functions" of the Car Washer/Unloader and Feeder Positions

Essential functions of a job "must be fundamental" rather than "marginal." Conneen v. MBNA Am. Bank., N.A., 334 F.3d 318, 326 (3d Cir. 2003). "The inquiry into whether a job requirement is essential to one's job 'is a factual determination that must be made on a case by

---

[8] In his Brief in Opposition, Plaintiff suggests that the position for which he applied in 2006 is a Car Washer position that does not require him to lift above his restrictions. (Brief Opp'n, Dkt. Entry 81, at 20-21.) In addition, in his affidavit, Mr. Supinski calls the position for which he applied in 2006 a "Car Wash position." (Supinski Aff., Dkt. Entry 83-2, ¶ 4, 8, 9 & 10.) The record refutes this contention. The collective bargaining agreement between UPS and Teamsters Local 229 entered into in 1997 stipulates that UPS would create full-time positions from its part-time jobs. This means the Car Washer positions at certain UPS facilities would be combined with other positions. Messrs. Romeo, Johnson, and Holgate all stated that there was no Car Washer position available at the Taylor facility after the agreement between UPS and Teamsters Union took effect, only combination full-time positions. Mr. Supinski's grievance application is consistent with this testimony. He stated: "On July of 2006, I bid an inside jobs that was posted, car wash and unload." (Grievance, Dkt. Entry 81-7.) Moreover, Dr. Janerich, in September of 2006, wrote a note in which he stated that Mr. Supinski is "capable and able to return to work on the local sort/carwash job he bid." (Janerich Note, Dkt. Entry 81-8.) Finally, in his most recent deposition, Plaintiff admits that he applied for a Car Washer/Loader position in 2006. Mr. Supinski answered in the affirmative when asked: "But you say that you bid for a tractor-trailer job and car wash positions. And by car wash positions, it's really the car wash/loader position from 2006 . . . ." (Supinski 2009 Dep., Dkt. Entry 77-2, at 24.) Thus, given the evidence of record, there is no genuine dispute of fact that the position at issue in this matter is a Car Washer/Loader position, and not simply a Car Washer position.

case basis [based upon] all relevant evidence.' " Id. (quoting Deane v. Pocono Med. Ctr., 142 F.3d 138, 148 (3rd Cir. 1998) (en banc)). Written job descriptions, the employee's experience, and the employer's description of essential functions are to be considered. Id. A plaintiff has the burden of proving that he or she can perform the essential functions of a position. Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1112 (8th Cir. 1995). "If (but only if) plaintiff cannot perform the essential functions of the [job], the next step is to determine whether any reasonable accommodation by [the employer] would enable [him] to perform that job." Powers, 206 F. Supp. 2d at 1113.

UPS does not contest whether Mr. Supinski can perform the Car Washer function of the combined position. Instead, UPS argues that he cannot perform the Unloader function. It also contends that Mr. Supinski cannot meet the essential functions of the Feeder Driver job.

As explained in Turner, 440 F.3d at 612:

A job function may be considered essential for any of several reasons, including, but not limited to, the following: (i) The function may be essential because the reason the position exists is to perform that function; (ii) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or (iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.

\* \* \*

Evidence of whether a particular function is essential might include, but is not limited to:
(i) The employer's judgment as to which functions are essential;
(ii) Written job descriptions prepared before advertising or interviewing applicants for the job;

(iii) The amount of time spent on the job performing the function;
(iv) The consequences of not requiring the incumbent to perform the function;
(v) The terms of a collective bargaining agreement;
(vi) The work experience of past incumbents in the job; and/or
(vii) The current work experience of incumbents in similar jobs.

Consideration of these factors compels the conclusion that Plaintiff cannot meet the essential functions of the positions in question. In particular, Plaintiff's physician-imposed restrictions are such that he cannot meet the physical demands of the jobs.

As noted above, the collective bargaining agreement mandates that UPS combine positions to avoid utilization of part time workers. The declarations of both management and union representatives confirm that since 1997 the Car Washer job has been combined with another position that required heavy lifting. The workers' compensation testimony of Elizabeth Foley that UPS had hired persons for the Car Washer function in a part time capacity did not address the question of whether such persons also performed other functions, including the heavy physical demands of an Unloader. Notably, she occupied a combined Clerk/Car Washer position, and acknowledged that she could be required to do the unloading function even in that combined position.

The UPS Essential Job Functions document states that the positions of Loader/Unloader require the employee to "[c]ontinuously lift and lower, push/pull packages that occasionally range up to 70 pounds each;" "[l]ift packages to heights above the shoulder and lower to foot level as appropriate;" and "[a]ssist in moving packages weighing up to 150

pounds." (Essential Job Functions, Dkt. Entry 38-16, at 36.)   A Loader/Unloader is additionally required to "[l]ift and lower packages while 'unloading' at a rate of 700 to 1300 per hour and while 'loading' at a rate of 500 to 1200 packages per hour." (See Essential Job Functions, at 37.) The Feeder position also requires regular lifting of packages weighing up to 70 pounds and occasionally handling weights in excess of 70 pounds.  (Id. at 33.)  "While an employer's judgment as to which functions of a job are essential is not dispositive of the issue, it is a factor entitled to weight in the making of such a determination."  Johnson v. McGraw-Hill Cos., 451 F. Supp. 2d 681, 703 (W.D. Pa. 2006).

In this case, the lifting requirements are inherent in the work performed by this package delivery company.  Indeed, the very reason for the positions in question is to move packages.[9] Mr. Supinski's limitations – twenty-five pounds to shoulder level, twenty pounds overhead – would render him incapable of moving the heavier packages. In similar employment contexts, courts have concluded that lifting heavy objects is an essential job function such that a physically-impaired person was not a "qualified individual."  See, e.g., Lombardo v. Air Prods. & Chems. Inc., Civil Action No. 05-1120, 2006 WL 1892677, at *10-11 (E.D. Pa. July 07, 2006) (lifting and reaching for heavy objects are essential functions in warehouse where it is undisputed that workers had to perform overhead lifting of objects weighing over 20 pounds);

_____

[9]In fact, the requirements for a Loader are the same as Plaintiff's pre-injury position, which he admits he cannot perform.

Frix v. Florida Tile Indus., Inc., 970 F. Supp. 1027, 1034-35 (N.D. Ga. 1997) (lifting items weighing more than 25 pounds is an essential function of storeroom coordinator position so that plaintiff, who was limited by doctor from lifting more than 20 pounds, was not a "qualified individual" under the ADA); Gallaty v. United Parcel Service, Inc., Civil Action No. 95-848, 1996 WL 251838, at *2 (E.D. La. May 10,1996) (plaintiff could not show that he was a "qualified individual" where the physical requirements of various positions at UPS exceeded his physician-imposed restrictions); Kindle v. Mid-Central/Sysco Food Servs., Inc., No. 95-2123, 1996 WL 99766, at *8 (D. Kan. Feb. 2, 1996) (plaintiff restricted from lifting more than 30 pounds not a "qualified individual" for warehouse job); Harden v. Delta Air Lines, Inc., 900 F. Supp. 493, 497-98 (S.D. Ga. 1995) (plaintiff not a "qualified individual" for airline customer service representative where physical limitations from rotator cuff injury precluded him from performing the heavy and repetitive lifting requirements of the position).

That Plaintiff may have been able to perform the essential functions of the Car Washer position does not satisfy his burden of showing that he was qualified to do the work of the position for which he submitted a bid. As noted above, the record shows that the only available position combined the Car Wash function with the Unloader function. The physical demands of the Unloader position are essentially the same as the Car Package Driver job that Plaintiff concedes he is unable to perform. An employee's experience in performing a certain function is relevant to the determination of whether the function as described by the employer is

essential. "It is clear . . . that the determination of which job functions are essential 'should reflect the actual functioning of the enterprise involved.'" Sturm v. UAL Corp., No. Civ. A. 98-264, 2000 WL 1300396, at *5 (D.N.J. Sept. 5, 2000). Plaintiff's experience in the Car Package Driver post substantiates the conclusion that the lifting requirements for the Car Washer/Unloader position on which he bid exceeded his physical capacity.

Likewise, the Feeder Driver position has job demands that exceed Plaintiff's limitations. In this regard, the testimony of Nicholas Coyer that he was required to lift up to 50 pounds overhead when he occupied the Feeder job is compelling evidence that Plaintiff was not a "qualified individual" for that position, even if he had satisfied the CDL requirement.[10]

### 2. Reasonable Accommodation

"Under the ADA, once an individual is unable to perform the essential functions of the position he seeks the inquiry shifts to whether reasonable accommodations can be made which would allow the individual to perform those essential functions." Freeman v. Rollins Envtl.

---

[10] Plaintiff has not provided competent evidence of any other position at the UPS Taylor facility that he sought or which became available after he was cleared to return to work with restrictions. In this regard, a chart submitted as Exhibit "H" in opposition to the summary judgment motion (Dkt. Entry 81-9), purportedly to show that certain persons were hired by UPS after Mr. Supinski was cleared to return to work with restrictions, is neither identified nor authenticated. There is also no evidence that Plaintiff was qualified to perform the essential functions of any of the positions on the chart. It was, of course, Plaintiff's burden to show that "he is an 'otherwise qualified' individual," Shiring v. Runyon, 90 F.3d 827, 832 (3d Cir. 1996), and he has failed to submit sufficient evidence to defeat Defendant's summary judgment motion on this point.

18

Servs. of New Jersey, No. CIV. A. 94-1871, 1996 WL 451317, at *6 (D.N.J. Aug. 5, 1996) (citing Milton v. Scrivner, 53 F.3d 1118, 1123 (10th Cir. 1995)). Mr. Supinski argues that UPS has failed to reasonably accommodate him. Specifically, he claims that UPS failed to accommodate him in refusing to transfer him to another less-demanding position, such as Car Washer, Trailer Cleaner, Feeder Driver, and Clerical positions in the past seven years. (Br. Opp'n Mot. Summ. J., Dkt. Entry 81, at 22.)

As noted above, the Car Washer position has been combined with other jobs that have essential functional requirements that exceeded Plaintiff's capabilities, and Plaintiff was not able to discharge the essential functions of the Feeder Driver position. He has not shown that there were any vacancies for the Trailer Cleaner job or any vacancies in any clerical positions that he could have performed.

"[E]mployers are not required to modify the essential functions of a job in order to accommodate an employee." Donahue v. Conrail, 224 F.3d 226, 232 (3d Cir. 2000) (decided under the Rehabilitation Act, which uses the same standard as the ADA). Stated otherwise, "'reasonable accommodation' does not mean eliminating an essential function of the job." Rucker v. City of Phila., Civ. A. No. 94-0364, 1995 WL 464312, at *3 (E.D. Pa. July 31, 1995). Moreover, "the ADA does not require an employer to create a new position to accommodate an employee with a disability." Buskirk v. Apollo Metals, 307 F.3d 160, 169 (3d Cir. 2002). Here, there is no dispute that Plaintiff is unable to perform the essential functions of the Car

Washer/Loader and Feeder Driver positions, and UPS has no duty to change the requirements for those positions to accommodate Mr. Supinski's physical capacity.

C. Retaliation and Pattern of Discrimination Claims

This Court's decision of January 16, 2009 granted summary judgment on a retaliation claim, finding that Plaintiff had presented no evidence of a causal relationship between Plaintiff's request for a reasonable accommodation and the refusal of UPS to place him in any position that may have existed prior to 2006. (Dkt. Entry 62 at 16-17.) In *Supinski II*, Plaintiff again asserted a claim of retaliation, arguing UPS retaliated against him for requesting an accommodation and for filing a charge of discrimination by denying him vacant positions. Once again, however, there is no evidence of a causal relationship between the protected conduct and the alleged adverse action. Instead, the record shows that he was not placed in the Car Washer/Unloader and Feeder Driver jobs because he cannot perform the essential functions of either position. Our Court of Appeals recently held, albeit in a non-precedential opinion, that a retaliation claim may not be premised upon the refusal of an employer to place the plaintiff in a position for which he was incapable of performing all essential functions. See Flax v. Delaware, 329 F. App'x 360, 365 (3d Cir. 2009) (per curiam). This decision is directly applicable here, and confirms the conclusion that Plaintiff's retaliation claim does not survive summary judgment.

Plaintiff further claims he has presented a "pattern-practice claim" against UPS by citing the now overruled class action certification decision in Hohider v. United Parcel Service, Inc.,

20

243 F.R.D. 147 (W.D. Pa. 2007), rev'd, 574 F.3d 169 (3d Cir. July 23, 2009), where the District Court certified a nationwide class of employees alleging a pattern or practice of unlawful discrimination against UPS under the ADA.  Plaintiff cites excerpts from the Hohider opinion as evidence that he was a victim of a patten of discrimination.

In International Brothers of Teamsters v. United States, 431 U.S. 324, 336 (1977), the Court stated that it is the plaintiff's burden to make out a *prima facie* case of discrimination in a pattern or practice suit.  "Proving isolated or sporadic discriminatory acts by the employer is insufficient to establish a prima facie case of a pattern or practice of discrimination; rather it must be established by a preponderance of the evidence that '[ ] discrimination was the company's standard operating procedure – the regular rather than the unusual practice.'" Cooper v. Federal Reserve Bank of Richmond,  467 U.S. 867, 875-76 (1984) (citing Teamsters, 431 U.S. at 336-37). The focus of a pattern-or-practice claim is not the "individual hiring decision, but on a pattern of discriminatory decisionmaking."  Teamsters, 431 U.S. at 360 n.46. In Teamsters, the Court upheld the District Court and Court of Appeals' findings that the Government-plaintiff proved its prima facie case (id. at 342-43), focusing on the Government's submission of statistical evidence of discrimination and testimony of individuals who recounted over 40 specific instances of discrimination.  Id. at 337-38.

In this matter, in contrast, Plaintiff has simply submitted one individual hiring decision, which is woefully inadequate for a pattern or practice of discrimination claim.  Plaintiff cannot simply bootstrap allegations and testimony from another action against UPS without showing

some type of correlation.  Cf. Hohider, 574 F.3d at 186 (whether a plaintiff is "qualified" under the ADA encompasses inquiries "too individualized and divergent with respect to this class to warrant certification under Rule 23(a) and (b)(2).")

In any event, Plaintiff cannot maintain a "pattern or practice" claim in this action.  First, as stated in United States v. City of New York, 631 F. Supp. 2d 419, 427 (S.D. N.Y. 2009):

> Courts have held that an individual cannot maintain a private, non-class, pattern-or-practice claim. See, e.g., Rambarran v. Mount Sinai Hosp., No. 06 Civ. 5109(DF), 2008 WL 850478, at *8 (S.D.N.Y. Mar. 28, 2008) (collecting cases); Tucker v. Gonzales, No. 03 CIV 3106(LTS)(FM), 2005 WL 2385844, at *5 (S.D.N.Y. Sept. 27, 2005) (dismissing pattern-or-practice claim as duplicative of disparate treatment claim); see also Lowery v. Circuit City Stores, Inc., 158 F.3d 742, 759 (4th Cir.1998) ("individuals do not have a private, non-class cause of action under § 1981 or Title VII"); Celestine v. Petroleos de Venezuella S.A., 266 F.3d 343, 356 (5th Cir.2001) ("As the plaintiffs are before us in their individual capacities ... the Teamsters method is not available to them"); Bacon v. Honda of Am. Mfg., Inc., 370 F.3d 565, 575 (6th Cir.2004) ("We therefore hold that the pattern-or-practice method of proving discrimination is not available to individual plaintiffs.").

And second, as UPS points out, Plaintiff failed to exhaust administrative remedies on a pattern and practice theory.  As it is clear that Plaintiff "has not exhausted . . . administrative remedies as to a pattern and practice claim . . ., such a claim is not properly before this Court."  Perry v. Clinton, Civil Action 08-01216, 2009 WL 4799290, at *8 (D. D.C. Dec. 10, 2009).  Accord Young v. Time Warner Cable Capital, L.P., 443 F.Supp.2d 1109, 1122-23 (W.D. Mo. 2006); Kasali v. J.P. Morgan/Chase Manhattan Mortgage Corp., No. Civ.A.04-500, 2004 WL 2252118, at *1 n. 1 (E.D. Pa. Sept. 28, 2004).  Accordingly, Plaintiff cannot purse a pattern or practice

claim, and UPS is entitled to summary judgment on this claim.

III.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment will be granted.

Because Plaintiff cannot establish a triable issue of fact material to his discrimination and

retaliation claims, the Motion for Summary Judgment will be granted and the Clerk of Court will

be directed to enter judgment in favor of UPS.  An appropriate order follows.

s/ Thomas I. Vanaskie     
Thomas I. Vanaskie
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD M. SUPINSKI, JR., | : | CIVIL ACTION NO. 3:CV-06-0793 |
| | : | |
| Plaintiff | : | (Judge Vanaskie) |
| | : | |
| v. | : | |
| | : | |
| UNITED PARCEL SERVICE, INC., | : | |
| | : | |
| Defendant | : | |

## ORDER

NOW, THIS 11th DAY OF FEBRUARY, 2010, for the reasons set forth in the foregoing memorandum, IT IS HEREBY ORDERED THAT:

1. Defendant's Motion for Summary Judgment (Dkt. Entry 77) is GRANTED.

2. The Clerk of Court is directed to enter judgment in favor of Defendant and against Plaintiff.

3. The Clerk of Court is further directed to mark this consolidated action CLOSED.


s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge