**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EDWARD M. SUPINSKI, | |
| Plaintiff, | CASE NO. 3:06-cv-00793 |
| v. | (JUDGE CAPUTO) |
| UNITED PARCEL SERVICE, INC., | |
| Defendant. | |

**MEMORANDUM**

Presently before the Court is the Motion to Preclude, or in the Alternative, Limit Back Pay by Defendant United Parcel Service, Inc. ("UPS"). The motion will be granted in part because the jury's back pay award must be reduced by the amount of worker's compensation paid to Plaintiff Edward Supinski. However, the motion will be denied in part because (1) UPS failed to meet its burden of proving Mr. Supinski failed to mitigate his damages; (2) any portion of a worker's compensation payment paid to a plaintiff's attorney cannot be deducted from a back pay award; and (3) any amount paid by a personal insurance company to a plaintiff cannot be deducted from a back pay award. Therefore, Mr. Supinski will be awarded $342,798.40 as back pay.

Also before the Court are UPS's Motion to Strike Brief in Opposition and Mr. Supinski's Motion to Strike UPS's Motion to Strike. Because the new evidence submitted by Mr. Supinski was not considered in determining a back pay award, both motions to strike will be denied as moot.

**I. Background**

Plaintiff Edward Supinski brought an action against Defendant United Parcel

Service, Inc. ("UPS"), alleging discrimination and retaliation action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Pennsylvania Human Relations Act, 43 Pa. Stat. Ann. § 951 *et seq.* The case went to trial on February 13, 2012. On February 17, 2012, the jury returned with a verdict in favor of Mr. Supinski. In addition to compensatory damages, it awarded Mr. Supinski back pay in the amount of $665,000. The jury's verdict regarding back pay was merely advisory, however, as back pay is an equitable remedy that must be determined by the court. *See Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 316 (3d Cir. 2006).[1]

UPS moved to preclude or, alternatively, limit the back pay award on February 21, 2012. Mr. Supinski filed a brief in opposition to UPS's motion, to which it attached a chart created by Mr. Supinski's counsel. UPS filed a motion to strike the chart on March 1, 2012. The motion to preclude or limit back pay has been fully briefed and is ripe for disposition. The motion to strike has not been fully briefed, but is now moot, as will be discussed below.

## II. Legal Standard

Back pay is an available remedy in an action under the ADA. *See* 42 U.S.C. § 12117; *Spencer*, 469 F.3d at 316. Although back pay is an equitable remedy to be determined by the court, a jury may issue an advisory opinion on back pay damages. *See Donlin v. Philips Lighting N. Amer. Corp.*, 581 F.3d 73, 78 n.1 (3d Cir. 2009); *Third Circuit Model Jury Instructions: Civil* § 9.4.3 (2011). The purpose of a back pay award is

---

[1] *Spencer v. Wal-Mart Stores, Inc.* addresses back pay under Title VII and not the ADA, but it applies here because remedies under the ADA are the same as those under Title VII. *See* 42 U.S.C. § 12117.

to "make persons whole for injuries suffered through past discrimination." *Booker v. Taylor Milk Co., Inc.*, 64 F.3d 860, 864 (3d Cir. 1995) (internal quotations omitted) (citing *Loeffler v. Frank*, 486 U.S. 549, 558 (1988)). A court may estimate what a plaintiff's earnings would have been if "an exact dollar calculation is impossible." *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 156 (3d Cir. 1999). Any uncertainty must be resolved in favor of the plaintiff. *Id.*

### III. Discussion

**A. Mitigation of Damages**

UPS moves to preclude or reduce the back pay award, arguing that Mr. Supinski failed to mitigate his damages. Although there is generally a presumption in favor of a back pay award, a plaintiff has a duty to mitigate damages. *Booker*, 64 F.3d at 864 (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975)). The employer has the burden of proving a failure to mitigate by showing "that 1) substantially equivalent work was available, and 2) the [ADA] claimant did not exercise reasonable diligence to obtain the employment." *Le v. Univ. of Pa.*, 321 F.3d 403, 407 & n.2 (3d Cir. 2003). A plaintiff exercises reasonable diligence "by demonstrating continuing commitment to be a member of the work force and by remaining ready, willing, and available to accept employment." *Booker*, 64 F.3d at 864. "Although a plaintiff's efforts need not be successful, he must exercise good faith in attempting to secure a position." *Id.* A plaintiff's failure to mitigate does not necessarily foreclose a back pay award; a court may instead reduce or decrease the award. *Id.* at 866.

UPS's motion will be denied because it has not met its burden of proving Mr. Supinski failed to exercise reasonable diligence. Mr. Supinski testified that he had

3

applied to "more [jobs] than I can count," Trial Tr. vol. 2, 33:15-16, February 14, 2012, but that he had not been offered any positions, *id.* at 69:11-13. UPS argues, however, that Mr. Supinski voluntarily removed himself from the job market by admitting to prospective employers that he was employed at UPS, on worker's compensation, and hoped to return to UPS. *See id.* at 68:24-69:2. The company cites to *Holocheck v. Luzerne County Head Start, Inc.*, which held that an employer can prove a failure to mitigate where there has been a "willful loss of earnings" by the plaintiff. No. 3:CV-04-2802, 2007 WL 954308, at *15 (M.D. Pa. 2007). But *Holocheck* is distinguishable because the plaintiff in that case had undertaken no efforts to apply for a new position. Mr. Supinski, on the other hand, cannot be characterized as "voluntarily removing himself" from the job market when he actively sought replacement employment–and I decline to embrace an interpretation of the "willful loss of earnings" rule that would require a plaintiff to lie about his circumstances in order to effectively mitigate. Because the evidence shows that Mr. Supinsk exercised reasonable diligence in obtaining employment, his back pay award will not be precluded or reduced for a failure to mitigate.

**B. Worker's Compensation**

UPS's motion to reduce the back pay award by the amount of Mr. Supinski's worker's compensation award will be granted in part because a reduction is proper under the ADA. Although the Third Circuit Court of Appeals has yet to address the issue, district courts within the Third Circuit have held that worker's compensation benefits should be deducted from back pay. *See, e.g.*, *McKenna v. City of Phila.*, 636 F. Supp. 2d 446, 457 (E.D. Pa. 2009). Mr. Supinski objects to UPS's motion, arguing that

unemployment and social security benefits are not deducted from backpay, *see id.*, and a reduction based on back pay would result in a windfall for the employer. But worker's compensation payments are different from unemployment or social security benefits because they come from insurance purchased by employers, meaning there is no windfall. Further, allowing a plaintiff to receive back pay and worker's compensation could make him more than whole. *Mason v. Ass'n for Independent Growth*, 817 F. Supp. 550, 557 & n.3 (E.D. Pa. 1993). Thus, the back pay award must be reduced by Mr. Supinski's worker's compensation benefits.

But UPS's motion will also be denied in part as to the worker's compensation payments that were paid to Mr. Supinski's worker's compensation attorney. The gross amount of Mr. Supinski's worker's compensation payments was $611 per week, but he received only $488.80 because the remainder went to the attorney who represented him in his worker's compensation matter. UPS argues that the full $611 per week should be deducted from Mr. Supinski's back pay award, citing to the holding in *Marinelli v. City of Erie*, 25 F. Supp. 2d 674, 679 (W.D. Pa. 1998), that a back pay award must be reduced by the gross amount of any worker's compensation payments. However, the Eastern District of Pennsylvania recently rejected the *Marinelli* holding on the grounds that it would not comport with Congress's determination that back pay awards should make a plaintiff whole. *McKenna*, 636 F. Supp. 2d at 458. I find the latter reasoning more persuasive, as Mr. Supinski did not receive the full gross amount and it would be inequitable to reduce the back pay by that amount. Thus, Mr. Supinski's back pay award will be reduced by the net amount he received: $488.80 per week.

**C. Personal Insurance Payments**

UPS's motion to reduce the back pay by the amount paid to Mr. Supinski from his personal auto insurance will also be denied. Mr. Supinski testified that he received $100 per week from his personal auto insurance for some time after the accident. Payments from a plaintiff's personal insurance, however, are akin to unemployment or social security benefits: they come not from the defendant but from a "collateral source," and thus "should not be applied to reduce the defendant's damages." *Id.* at 457. UPS fails to cite any case or make any argument explaining why the personal insurance payments should be deducted. Therefore, the back pay award will not be reduced by the weekly insurance payments.

**D. Calculating the Back Pay Award**

   **1. Wages**

The evidence on the record indicates that Mr. Supinski is entitled to a back pay award of $318,698.40 for lost wages. Mr. Supinski testified on direct examination that his salary was "in the $50,000 range" and testified on cross examination that he made about $1100 to $1200 per week. Construing that evidence in favor of Mr. Supinski, *see Durham Life Ins. Co. v. Evans*, 166 F.3d at 156, I calculate Mr. Supinski's back pay based on a weekly salary of $1200.[2] As I stated in the jury instructions, the back pay

---

[2] Mr. Supinski argues that his salary should be calculated using the wages listed in the Collective Bargaining Agreement ("CBA") (admitted to evidence as Defendants' Exhibit 1) for the Tractor Trailer Driver position. This is inappropriate for two reasons: (1) Mr. Supinski's position at UPS was a Package Car Driver, not a Tractor Trailer Driver, and (2) there was no testimony at trial that Mr. Supinski actually received the wages listed in the CBA for either the Package Car Driver or the Tractor Trailer Driver positions. It would therefore be inappropriate to use the CBA wage charts in determining the appropriate bac pay award.

period dates from when UPS first failed to accommodate Mr. Supinski, which I find was on November 11, 2002 when UPS gave notice to Mr. Supinski that he was not eligible for an accommodation. The back pay period ends on the date of the verdict, which was February 17, 2012. Thus, Mr. Supinski is owed for seven weeks in 2002, fifty-two weeks per year for 2003 through 2011, and seven weeks in 2012–in other words, a total of 482 weeks. An award of $1200 for 482 weeks would be $578,400. However, the award must be reduced by $488.80 per week, and $488.80 for 482 weeks is $235,601.60. Mr. Supinski will thus be awarded the difference between $554,300 and $235,601.60: $342,798.40.

### 2. Pension

Mr. Supinski argues that his back pay award should also include compensation for his lost pension, but I have already issued an order regarding Mr. Supinski's pension. At the close of Mr. Supinski's trial, I ordered that "UPS shall make contributions to the pension plan sufficient to restore Mr. Supinski's pension rights where they would have been had he not been subjected to UPS's conduct." Trial Tr. vol. 5, 89:17-20, Feb. 17, 2012. Thus, UPS is already obligated to provide for any lost pension and this amount cannot be included in my back pay order.

### 3. Vacation/Sick Pay

Mr. Supinski also claims that he should receive money for lost vacation and/or sick days, but this type of award is inappropriate because it is overly speculative. *See McKenna*, 2010 WL 2891591 at *19. There is no evidence in the record that Mr. Supinski would have left his sick or vacation time unused and then would have received monetary compensation for it. Thus, lost vacation and/or sick days will not be included in

the back pay award.

### 4. Medical Insurance Coverage

Mr. Supinski finally asserts that any back pay award must also compensate for the lost medical insurance coverage, but the record does not support such an inclusion. Mr. Supinski testified that he had medical, dental, and vision coverage with UPS, Trial Tr. vol. 2, 28:4-6) and that after losing his job with UPS, he had medical, dental, and vision coverage through his wife's job, *id.* 69:17-24. Further, his wife testified that her job provided benefits that covered Mr. Supinski, and that she was unaware of any difference other than that she had to pay for part of her benefits. *Id.* at 96:21-97:11, 98:16-24. But there was no testimony from Mr. Supinski that he did not have to pay for part of his benefits at UPS. Thus, nothing in the record establishes that Mr. Supinski suffered any loss in insurance coverage based on UPS's conduct.

### 5. The Jury Award

Based on these calculations, I cannot heed the advice of the jury to award $665,000 in back pay. There are several possible reasons that the jury's award is substantially larger than my calculation. The jury may have misunderstood my instruction to deduct Mr. Supinski's worker's compensation payments from any back pay award. They may also have included compensation for UPS's annual payments to Mr. Supinski's pension because they were unaware that my reinstatement order addressed those. Regardless, I find that $665,000 is excessive and not supported by the evidence as noted above. I will instead order that UPS provide Mr. Supinski with $342,798.40 in back pay damages.

**E. Motions to Strike**

UPS's motion to strike will be denied as moot. UPS asks the Court to strike the brief in opposition submitted by Mr. Supinski as well as the documents attached to the brief. The attached documents appear to be wage and pension charts created by Mr. Supinski's counsel, and UPS argues that these should be stricken and not considered by the Court because Mr. Supinski did not present them at trial. In determining the correct back pay award, I did not use the attached charts nor did I consider arguments based upon the charts. Thus, there is no need to strike these documents and UPS's motion is moot. Because UPS's motion will be denied as moot, Mr. Supinski's motion to strike UPS's motion is also moot.

## II. Conclusion

For the reasons stated above, UPS's motion to preclude or reduce back pay will be granted in part and denied in part. Mr. Supinski will be awarded $342,798.40 in back pay. UPS's motion to strike and Mr. Supinski's motion to strike will be denied as moot. An appropriate order follows.

| | |
|---|---|
| 3/6/2012 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |