**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

EDWARD M. SUPINSKI,

    Plaintiff,

        v.

UNITED PARCEL SERVICE, INC.,

    Defendant.

CASE NO. 3:06-CV-00793

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is Defendant United Parcel Service, Inc.'s ("UPS") post-trial Motion for Judgment as a Matter of Law, or, in the Alternative, for a New Trial Pursuant to Rules 50 & 59 of the Federal Rules of Civil Procedure. (Doc. 322.)  Because Plaintiff Edward Supinski ("Supinski") provided sufficient evidence in support of his Americans with Disabilities Act ("ADA") failure to accommodate and retaliation claims, UPS' motion for judgment as a matter of law will be denied.  And, because the jury's verdict was not against the weight of the evidence, Supinski's counsel did not make it reasonably probable that the verdict was influenced by improper conduct, and the Court's evidentiary rulings were not erroneous or prejudicial, UPS' request for a new trial will be denied.

## I. Background

As the parties have already been through a trial on this matter, only a brief recount of the factual events necessary to the resolution of the instant motion will be provided. Supinski worked at UPS starting in 1979.  In October of 2000, while working as a Package Car Driver, he sustained a work-related massive cuff tear in his right shoulder that required

him to undergo surgery and physical therapy. On October 4, 2001, Supinski's doctor approved his return to work, but with permanent restrictions: he could only lift seventy pounds to waist level, twenty-five pounds to shoulder level, and twenty pounds overhead.

These restrictions prevented Supinski from returning to his position as Package Car Driver, but he continued to seek employment with UPS through his union. In November of 2002, UPS notified Supinski that it had concluded he was not eligible for a reasonable accommodation under the ADA.  He then filed a charge of discrimination with the EEOC and PHRC.  On November 18, 2003, the PHRC issued a finding of "No Probable Cause," concluding that "the investigation did not establish the legal requirements for disability under the Pennsylvania Human Relations Act (PHRA) or the Pennsylvania Fair Educational Opportunities Act (PFEOA)."

Supinski continued to seek employment with UPS.  At some point prior to May of 2005, he applied for a Feeder Driver position, and in July of 2006, he applied for a Car Washer/Unloader position.  UPS did not hire him for the positions, determining that he could not satisfy the essential job functions (i.e., heavy lifting) of either job and that he did not have a disability.

Supinski filed suit against UPS in March of 2006, asserting claims for disability discrimination, failure to accommodate, and retaliation under the PHRA, then adding similar claims under the ADA.  Supinski filed a second suit in February 2008 based on the failure to hire him for the Car Washer/Unloader position; the two actions were consolidated.

The case proceeded to trial in February of 2012 on the PHRA and ADA claims.  On February 17, 2012, a jury found that UPS failed to accommodate Supinski and retaliated against him in violation of the ADA and PHRA.  The jury awarded Supinski $280,000 in

2

compensatory damages.  UPS was ordered to reinstate Supinski, restore his pension to

what it would have been if not for its conduct, and to provide him with back pay in the

amount of $342,798.40.  UPS reinstated Supinski on March 20, 2012.  Thereafter, UPS

filed the instant post-trial motion for judgment as a matter of law, or, in the alternative, for

a new trial.  UPS' motion has been fully briefed and is now ripe for disposition.

## II. Legal Standards

### A.       Motion for Judgment as a Matter of Law

To prevail on a renewed motion for judgment as a matter of law, the moving party

must establish that there was no "legally sufficient evidentiary basis for a reasonable jury

to have found for [the prevailing party] on that issue." Fed.R.Civ.P. 50(a)(1).  In deciding

whether to grant a Rule 50(b) renewed judgment as a matter of law motion:

> the trial court must view the evidence in the light most favorable to the
> nonmoving party, and determine whether the record contains "the minimum
> quantum of evidence from which a jury might reasonably afford relief." The
> court may not weigh evidence, determine the credibility of witnesses or
> substitute its version of the facts for that of the jury. The court may, however,
> enter judgment notwithstanding the verdict if upon review of the record, it can
> be said as a matter of law that the verdict is not supported by legally sufficient
> evidence.

*Parkway Garage, Inc. v. City of Phila.*, 5 F.3d 685, 691–92 (3d Cir. 1993), *abrogation on*

*other grounds recognized by United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316

F.3d 392 (3d Cir. 2003) (citations omitted).

A court may grant judgment as a matter of law "only if, viewing the evidence in the

light most favorable to the nonmovant and giving it the advantage of every fair and

reasonable inference, there is insufficient evidence from which a jury reasonably could find

liability." *LePage's Inc. v. 3M*, 324 F.3d 141, 145–46 (3d Cir. 2003) (quoting *Lightning Lube,*

*Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993)).  The question is not whether there is literally no evidence supporting the non-moving party, but whether there is evidence upon which the jury could properly find for the non-moving party. *See Walter v. Holiday Inns, Inc.*, 985 F.2d 1232, 1238 (3d Cir. 1993) (citing *Patzig v. O'Neil*, 577 F.2d 841, 846 (3d Cir. 1978)).

**B.    Motion for New Trial**

"The court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." Fed. R. Civ. P. 59(a)(1)(A).  The decision whether to grant a new trial following a jury verdict is within the sound discretion of the trial court. *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36, 101 S. Ct. 188, 66 L. Ed. 2d 193 (1980); *Blancha v. Raymark Indus.*, 972 F.2d 507, 512 (3d Cir. 1992).  Courts have granted motions for a new trial where: "(1) there is a significant error of law, to the prejudice of the moving party; (2) the verdict is against the weight of the evidence; (3) the size of the verdict is against the weight of the evidence; or (4) counsel engaged in improper conduct that had a prejudicial effect on the jury." *Todd v. Luzerne Cnty. Children & Youth Servs.*, No. 04-2637, 2011 WL 841429, at *2 (M.D. Pa. Mar. 8, 2011) (citing *Maylie v. Nat'l R.R. Passenger Corp.*, 791 F.Supp. 477, 480 (E.D. Pa. 1992), *aff'd* 983 F.2d 1051 (3d Cir.1992)).  Where the evidence is in conflict, however, and subject to two or more interpretations, the trial judge should be reluctant to grant a new trial. *See Klein v. Hollings*, 992 F.2d 1285, 1295 (3d Cir.1993).

### III. Discussion

Defendant's motion raises two legal theories.  First, UPS argues that it is entitled to Judgment as a Matter of Law.  Alternatively, UPS asserts that it should be granted a new

trial.  These arguments will be addressed in turn.

**A.    Renewed Judgment as a Matter of Law**

During the trial, UPS raised Rule 50 motions for judgment as a matter of law as to

Plaintiff's failure to accommodate claim and his retaliation claim. (Trial Tr., Feb. 14, 2012

P.M. Session, 3:2-6:19.)  Therefore, pursuant to Rule 50(b), the Court may now reconsider

the legal questions raised by those arguments.

**1.    Failure to Accommodate**

To establish a *prima facie* failure to accommodate case under the ADA, 42 U.S.C.

§§ 12101-12213, the plaintiff must prove "'(1) he is a disabled person within the meaning

of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with

or without reasonable accommodations by the employer; and (3) he has suffered an

otherwise adverse employment decision as a result of discrimination' ... [which] in this

context include[s] refusing to make reasonable accommodations for a plaintiff's disabilities."

*Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 186-87 (3d Cir. 2009) (quoting *Williams*

*v. Phila. Housing Auth. Police Dep't*, 380 F.3d 751, 761 (3d Cir.2004)).

As such, to prevail under the ADA, Supinski was required to establish that he was

a "qualified individual with a disability." 42 U.S.C. § 12112(a).  The ADA defines "qualified

individual with a disability" as "an individual with a disability who, with or without reasonable

accommodation, can perform the essential functions of the employment position that such

individual holds or desires." 42 U.S.C. § 12111(8).  The ADA defines "disability" with regard

to an individual as either: (i) "a physical or mental impairment that substantially limits one

or more of the major life activities of such [an] individual"; (ii) "a record of such an

impairment"; or (iii) "being regarded as having such an impairment." 42 U.S.C. § 12102(2).

Here, Supinski's lone theory of liability for his failure to accommodate claim was that UPS "regarded" him as being disabled.

> Under the ADA, a person is "regarded as" having a disability if he:
>
> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by the covered entity as constituting such limitation;
>
> (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
>
> (3) Has [no such impairment] but is treated by a covered entity as having a substantially limiting impairment.

*Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 187 (3d Cir.1999); *see also* 29 C.F.R. § 1630.2(l).   Accordingly, the relevant inquiry is whether UPS "perceived [Supinski] as disabled within the meaning of the ADA, not whether [Supinski] was actually disabled . . . ." *Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 434 (3d Cir. 2009).

This perceived disability must substantially limit a "major life activity," such as working. *See id*. (citing 29 C.F.R. § 1630.2(l)).  An individual is "substantially limited" with regard to working "if there is a significant restriction in a person's 'ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities.'" *Id*. at 435 (quoting 29 C.F.R. § 1630.2(j)(3)(i)).  Thus, to prevail on his "regarded as" claim, Supinski was required to show that UPS believed he was unable to work in a class of jobs or broad range of jobs. *See id*.

Here, Supinski presented sufficient evidence that a jury could conclude that UPS "regarded" him as being disabled.  Although UPS asserts that it is entitled to judgment as a matter of law because Supinski did not apply to a broad class of jobs, UPS disregards testimony that UPS believed that Supinski could not perform any job at UPS because of his

6

lifting restriction. (Trial Tr., Feb. 13, 2012, 49:5-10.)   And, of all the different job classifications available at UPS, evidence was presented that UPS believed Supinski's restrictions prevented him from performing any of these jobs. (*Id.*)   Thus, based on this testimony, there was sufficient evidence for a jury to conclude that UPS regarded Supinski as unable to work in a broad range of jobs.  UPS' Rule 50 motion on this issue will therefore be denied.

### 2.    Retaliation

To establish a *prima facie* retaliation claim under the ADA, the plaintiff must prove "'(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.'" *Williams*, 380 F.3d at 759 (quoting *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567-68 (3d Cir. 2002)).  UPS argues that the evidence presented by Supinski fails to establish materially adverse action capable of sustaining a *prima facie* retaliation claim.

According to the Supreme Court, action is materially adverse if "it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006) (quoting *Rochon v. Gonzales*, 438 F. 3d 1211, 1219 (D.C. Cir. 2006)).[1]  While

---

[1]    *Burlington* involved a retaliation claim under Title VII of the Civil Rights Act of 1964, not the ADA. *Burlington*, 548 U.S. at 56.  However, district courts in the Third Circuit have applied this standard to claims of retaliation under the ADA, *see, e.g., Mills v. Temple Univ.*, - - - F. Supp. 2d - - -, 2012 WL 1122888, at *16 n.11 (E.D. Pa. 2012); *Boandl v. Geithner*, 752 F.Supp.2d 540, 561–62 (E.D. Pa.2010); *Warshaw v. Concentra Health Servs.*, 719 F.Supp.2d 484, 500 (E.D. Pa.2010); *Hemby-Grubb. v. Ind. Univ. of Pa.*, No. 06–1307, 2008 U.S. Dist. LEXIS 72481, at *19, 2008 WL 4372937 (W.D. Pa.

the material adversity standard requires a distinction between significant and trivial harms, and the antiretaliation provisions are not meant to protect against "petty slights, minor annoyances, and simple lack of good manners," *id.*, "the significance of any given act of retaliation will often depend upon the particular circumstances." *Id.* at 69; *see also Supinski v. United Parcel Serv., Inc.*, 413 F. App'x 536, 543 (3d Cir. 2011) (citing *Gaujacq v. EDF, Inc.*, 601 F.3d 565, 578 (D.C. Cir. 2010)).

Given the evidence presented at trial, a jury could reasonably conclude that UPS' conduct amounted to materially adverse action after Supinski requested reasonable accommodations for his injuries.  While UPS argues that other district courts "have found far more egregious conduct insufficient as a matter of law to demonstrate  materially adverse employment action," sufficient evidence was presented that UPS sought to deter Supinski from seeking reinstatement with UPS.  In particular, the evidence presented by Supinski allowed a reasonable jury to conclude that UPS created an environment which would discourage him from returning to work at UPS. (Trial Tr., Feb. 14, 2012, A.M. Session, 66:3-11.)  Thus, Supinski's retaliation claim is not simply that he was insulted, slighted, embarrassed, or harassed, but rather that UPS engaged in hostile conduct over a period of years to discourage Supinski from seeking work with UPS.  As a result, these particular circumstances demonstrate materially adverse employment action not present in the cases relied on by UPS. *Cf. St. John v. Potter*, No. 09-4196, 2011 WL 780685, at *8-*9 (E.D. Pa. Mar. 4, 2011) (placement on administrative leave for fifteen minutes and order

---

Sept. 22, 2008), because "retaliation claims under the ADA are analyzed under the same framework as Title VII discrimination claims." *Shellenberger v. Summit Bancorp., Inc.*, 318 F.3d 183, 188 (3d Cir. 2003) (citing *Krouse*, 126 F.3d at 500).

to clear out locker did not constitute adverse action); *Nolan v. Swartz Campbell, LLC*, No. 05-1508, 2008 WL 598291, at *19-*20 (W.D. Pa. Feb. 29, 2008) ("something beyond isolated verbal mistreatment is needed to convert what was otherwise an occasionally unpleasant environment into an actionable one"); *Nagle v. RMA*, 513 F. Supp. 2d 383, 390-91 (E.D. Pa. 2007) ("the Court cannot conclude that a reasonable employee would be dissuaded from making a discrimination claim based on a single meeting [where employee was threatened with loss of employment] with no evidence of further consequences resulting from that meeting"). Accordingly, UPS' motion for judgment as a matter of law on the retaliation claim will be denied.

**B.     Motion for New Trial**

UPS alternatively argues that it is entitled to a new trial because the jury's verdict is against the weight of the evidence and because of a number of prejudicial errors that occurred before and during trial.

### 1.      Verdict Against the Weight of the Evidence

UPS argues that Supinski failed to meet the threshold burden of proof on both his discrimination and retaliation claims. As such, UPS contends that a miscarriage of justice has occurred, mandating a new trial.

In the Third Circuit, "[a] new trial may be granted when the verdict is contrary to the great weight of the evidence; that is, 'where a miscarriage of justice would result if the verdict were to stand.'" *Pryer v. C.O. 3 Slavic*, 251 F.3d 4487, 453 (3d Cir. 2001) (quoting *Olefins Trading, Inc. v. Han Yang Chem. Corp.*, 9 F.3d 282, 289 (3d Cir. 1993)). "'This limit upon the district court's power to grant a new trial seeks to ensure that a district court does not substitute its judgment of the facts and the credibility of the witnesses for that of the

jury.'" *Delli Santi v. CNA Ins. Cos.*, 88 F.3d 192, 201 (3d Cir. 1996) (quoting *Fineman v. Armstrong World Indus., Inc.*, 980 F.3d 171, 211 (3d Cir. 1992)).  Thus, the Third Circuit has indicated that "a District Court reviewing a jury verdict has an 'obligation . . . to uphold the jury's award if there exists a reasonable basis to do so.'" *Evans v. Port Authority of New York & New Jersey*, 273 F.3d 346, 351–352 (3d Cir. 2001) (quoting *Motter v. Everest & Jennings, Inc.*, 883 F.2d 1223, 1230 (3d Cir. 1989)).

As noted above, Supinski made a threshold showing of all elements of his discrimination and retaliation claims.  And, based on this evidence, the jury reasonably concluded that UPS violated the ADA.  As such, the jury verdict is not against the great weight of the evidence and Defendant's motion for a new trial on this issue will be denied.

### 2.    Prejudicial Errors

#### a.    Plaintiff's Counsel's Trial Misconduct

UPS next asserts that a new trial is warranted based on Plaintiff's counsel's trial misconduct.  According to UPS, Plaintiff's counsel repeatedly violated the rules of evidence and suggested to the jury that the defense and the Court were keeping evidence from the jury.  Furthermore, UPS contends that Plaintiff's counsel introduced evidence without foundational support.  Lastly, Defendant asserts that Plaintiff improperly referred to "sending a message" to UPS during closing argument even though the Court had previously bifurcated punitive damages for a separate phase at trial.

"A new trial may be granted only where the improper statements 'made it reasonably probable that the verdict was influenced by prejudicial statements.'" *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 363 (3d Cir. 1999) (quoting *Fineman*, 980 F.2d at 207).  However, "not all improper remarks will engender sufficient prejudice to mandate the granting of a new trial." *Fineman*, 980 F.2d at 207.  Instead, "often a combination of improper remarks are

required to persuade us of prejudicial impact." *Id*. In addition, "a court may grant a new trial when counsel's closing argument refers to evidence not in the record or other extraneous matters if the court finds that there is a 'reasonable probability of influencing the verdict.'" *Price v. Trans Union, L.L.C.*, - - - F. Supp. 2d - - -, 2012 WL 898687, at *16 (E.D. Pa. 2012) (quoting *Ayoub v. Spencer*, 550 F.2d 164, 170 (3d Cir. 1977)). But, where a party fails to object to a closing statement at trial, the party waives the "right to move for a new trial on this ground, and the Court will not grant a new trial unless [counsel's] misconduct resulted in a miscarriage of justice." *Id*. (citing *Wilson v. Vt. Castings, Inc.*, 170 F.3d 391, 395-96 (3d Cir. 1999)).

Here, based on the wide discretion afforded to the trial court in matters relating to the conduct of counsel during trial, the Court will deny UPS' motion for a new trial based on Plaintiff's counsel's trial conduct. *See Forrest v. Beloit Corp.*, 424 F.3d 344, 351 (3d Cir. 2005) (citing *Greenleaf*, 174 F.3d at 363). While the record demonstrates a number of questions posed by Plaintiff's counsel that were objected to as inappropriate, the Court sustained each objection as was appropriate. The jury was also instructed to disregard any material which should not have been presented. And, even though Plaintiff's counsel was instructed by the Court to refrain from testifying and instead to ask questions of witnesses, the Court does not find this conduct, or Plaintiff's counsel's remarks during closing, to have engendered sufficient prejudice necessitating the grant of a new trial. In that regard, while Plaintiff's counsel's zealous advocacy may have resulted in arguably improper conduct at times during trial, her actions in this case did not make it "reasonably probable" that the jury verdict was improperly influenced by her conduct.[2]   Defendant's motion for a new trial on

---

[2]   The Court is aware that Chief Judge Kane recently granted a new trial in a case litigated by Supinski's counsel due to her trial-related misconduct. *See Young v. Pleasant Valley Sch. Dist.*, No. 07-0854, 2012 WL 1827194 (M.D. Pa. May 18, 2002). Based on the trial proceedings in this case, however, a

this issue will therefore be denied.

### b.     Evidentiary Rulings

UPS also seeks a new trial based on a number of perceived prejudicial and erroneous evidentiary rulings that occurred before and during trial.  When a motion for new trial is predicated on a ruling that initially rested within the discretion of the trial court, such as an evidentiary ruling, the district court's latitude is broad. *See, e.g., Klein v. Hollings*, 992 F.2d 1285, 1290 (3d Cir. 1993) (citing *Bhaya v. Westinghouse Elec. Corp.*, 922 F.2d 184, 187 (3d Cir. 1990)).  Thus, "a District Court must first determine whether an error was made, and must then determine 'whether that error was so prejudicial that refusal to grant a new trial would be inconsistent with substantial justice.'" *Jackson v. City of Pittsburgh*, No. 07-111, 2011 WL 3443951, at *8 (W.D. Pa. Aug. 8, 2011) (quoting *Bhaya v. Westinghouse Elec. Corp.*, 709 F. Supp. 600, 601 (E.D. Pa. 1989)).  UPS' specific alleged evidentiary errors are addressed below.

### i.     Motion *in Limine* to Exclude Stray Remarks

Prior to trial, UPS filed a motion *in limine* to exclude evidence relating to stray remarks made by Joe Ross, Bob Maguire, and Dan Jones. (Doc. 158.)  UPS sought to exclude these remarks because neither Ross or Jones had decision-making authority concerning Supinski's request for accommodation and/or his ability to return to work.  A ruling on UPS' motion was deferred until the time of trial, (Doc. 226), at which Supinski was permitted to offer testimony that Ross had called him a "cripple" and Jones told Supinski his presence at the UPS facility was "disturbing."   Specifically, the Court overruled UPS' hearsay objections as to these statements because they were admissions by UPS managers or supervisors.

---

new trial is not warranted.

UPS argues that the Court erred in permitting this testimony because "stray remarks" hold very low probative value.  UPS is correct that the Third Circuit has indicated that "stray remarks by non-decisionmakers alone are insufficient to establish discriminatory intent." *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 521 (3d Cir. 1997).  However, "such remarks can still constitute evidence of the atmosphere in which the employment decision was carried out, and therefore can be relevant to the question of retaliation." *Id*. (citing *Woodson v. Scott Paper Co.*, 109 F.3d 913, 922 (3d Cir. 1997); *Antol v. Perry*, 82 F.3d 1291, 1302 (3d Cir. 1996)).  Indeed, because "such evidence may be critical for the jury's assessment of whether a given employer was more likely than not to have acted with an unlawful motive. . . . [S]tray remarks by nondecisionmakers may be properly used by litigants as circumstantial evidence of discrimination." *Id*. (internal citations omitted).

Contrary to UPS' contention, permitting Plaintiff to testify as to the comments by Ross and Jones was in accord with Third Circuit precedent.  In particular, these remarks were admissible as circumstantial evidence of the alleged hostility towards injured workers at UPS.  And, as such, it was proper for a jury to consider these comments.  Moreover, even if admitting these statements was improper, the Court does not believe that the error was so prejudicial as to be inconsistent with substantial justice.  Defendant's request for a new trial on this issue will be denied.

### ii.    Motion *in Limine* to Exclude the PHRC Findings

In 2003, after UPS denied his 2002 accommodation request, Supinski filed a claim with the PHRC.  The PHRC concluded that Supinski's impairment did not substantially limit one or more major life activities.  Thereafter, in 2005, Plaintiff sought an accommodation from UPS.  His request was again denied.

Prior to trial, Plaintiff filed a motion *in limine* to exclude the PHRC findings. (Doc.

101.)  The Court granted Plaintiff's motion. (Doc. 226.)  At trial, the Court reiterated that the PHRC decision was not admissible as to liability and damages because its probative value substantially outweighed the danger of unfair prejudice.  However, the Court indicated that the decision could be utilized in a post-trial bifurcated hearing on punitive damages.

UPS argues that the PHRC decision confirmed that their decision in 2002 that Plaintiff was not disabled was correct, which, as a result, meant that UPS could not subsequently have "regarded" him as disabled in 2005. Thus, UPS contends that the Court's ruling is inherently contradictory and prejudicial to UPS- and ultimately not maintainable- because UPS' state of mind is critical to evaluating both liability and punitive damages.

While it is true that an "employer's state of mind [remains] relevant to the appropriate remedies" in an ADA case, *Williams v. Phila. Housing Auth. Police Dep't*, 380 F.3d 751, 770 n.14 (3d Cir. 2004) (citations omitted), UPS' argument ignores the fact that "where a contention for a new trial is based on the admissibility of evidence, the 'trial court has great discretion . . . .'" *Link v. Mercedes Benz of N. Am., Inc.*, 788 F.2d 918, 921-22 (3d Cir. 1986) (quoting Kane v. Ford Motor Co., 450 F.2d 315, 316 (3d Cir. 1971)).  Absent an abuse of discretion, the Court's ruling on the admissibility of evidence will be upheld. *See Winters v. Marina Dist. Dev. Co.*, 317 F. App'x 286, 288 (3d Cir. 2009) (citing *West v. Phila Elec. Co.*, 45 F.3d 744, 752 (3d Cir. 1995); *Glass v. Phila. Elec. Co.*, 34 F.3d 188, 191 (3d Cir. 1994)). "In the context of a decision to admit or exclude evidence under Federal Rule of Evidence 403, an abuse of discretion exists where that decision is shown to be 'arbitrary and irrational.'" *Id*. (quoting *Bhaya v. Westinghouse Elec. Corp.*, 922 F.2d 184, 187 (3d Cir. 1990)).

Under the Federal Rules of Evidence, "all relevant evidence is admissible, except as

otherwise provided . . . by these rules . . . ." Fed. R. Evid. 402.  Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401.  Nevertheless, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Fed. R. Evid. 403. According to the Third Circuit, "Rule 403 recognizes that a cost/benefit analysis must be employed to determine whether or not to admit evidence; relevance alone does not ensure its admissibility. That is, evidence may be excluded if its probative value is not worth the problems that its admission may cause . . . ." *Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1343 (3d Cir. 2002).

Here, admission of the PHRC decision into evidence would have been unfairly prejudicial for a number of reasons.  First, as indicated at trial, UPS' initial refusal to accommodate Supinski occurred prior to the PHRC decision, which substantially decreases the probative value of the findings.  Second, and relatedly, UPS could well have violated the ADA independent of the general findings of the PHRC.  Third, and most importantly, the PHRC findings were excluded because of fear that a jury would give undue weight to the decisions of a government agency.  Finally, contrary to UPS' assertion, it was not inherently contradictory to rule that the PHRC findings could be offered for the jury's consideration as to punitive damages because this evidence related to UPS' ability to form the requisite malicious intent necessary to support an award of punitive damages.  In light of these considerations, Defendant is not entitled to a new trial based on the exclusion of the PHRC decision from evidence at trial.

### iii.    Motion in *Limine* to Exclude Undisclosed Witnesses

Before trial, UPS filed a motion in *limine* to exclude the testimony of witnesses not

disclosed by Plaintiff prior to the filing of his pretrial memorandum. (Doc. 156.)  The Court denied UPS' motion on the grounds that any failure to disclose was harmless. (Doc. 226.) However, the Court permitted UPS to take the depositions of these witnesses on the Friday and Saturday prior to trial.  UPS argues that allowing these undisclosed witnesses to testify at trial was prejudicial against UPS and in violation of the Federal Rules of Civil Procedure because Supinski never provided a substantial justification for his failure to identify these witnesses.

Rule 37(c)(1) provides, in pertinent part, that "if a party fails to . . . identify a witness as required by Rule 26(c) or (e), the party is not allowed to use that . . . witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  According to the Third Circuit, "a District Court does not abuse its discretion in refusing to exclude evidence as a Rule 37(c)(1) sanction when the non-moving party's failure to produce the information requested in discovery is harmless to the movant." *PPG Indus., Inc. v. Zurawin*, 52 F. App'x 570, 574 (3d Cir. 2002) (citing *Newman v. GHS Osteopathic*, 60 F.3d 153, 156 (3d Cir. 1995)).

Here, Supinski's failure to disclose the identity of certain witnesses was harmless to UPS.  UPS was permitted to depose these witnesses, which cured the alleged prejudice suffered by Defendant.  Furthermore, allowing these witnesses to testify did not disrupt the flow of trial, nor has the Court identified any bad faith or wilful failure to disclose these witnesses by Plaintiff.  *See, e.g., Watson v. Borough of Susquehanna*, No. 09-294, 2012 WL 1454010, at *3 (M.D. Pa. Apr. 25, 2012).  And, as the testimony offered at trial was consistent with Plaintiff's case of discrimination and retaliation, the Court does not find that this evidence prejudiced or surprised UPS.  Therefore, the Court will not grant UPS a new trial based on the trial testimony of the undisclosed witnesses.

### iv.    The Workers' Compensation Letter Testimony

Prior to trial, UPS filed a motion in *limine* to exclude "any evidence, testimony, or argument describing the manner in which Plaintiff sustained his injury, his resulting medical treatment, and the separate workers' compensation litigation." (Doc. 162.)  While the Court granted UPS' motion to exclude Plaintiff's proposed Trial Exhibits 34 and 36, the letters regarding the workers compensation settlement negotiations, the motion to exclude any other evidence, testimony, or argument pertaining to the separate workers compensation litigation was deferred to the time of trial. (Doc. 226.)  At trial, Supinski was not permitted to enter the letters into evidence.  However, Plaintiff was allowed to testify that he received a letter in the mail stating that he was resigning his position for one dollar ("the one dollar letter").  UPS argues that by permitting Plaintiff's testimony describing the one dollar letter, "the entire purpose of excluding these impermissible exhibits was undermined."

Rule 408 of the Federal Rules of Evidence provides:

(a) **Prohibited Uses**. Evidence of the following is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:

   (1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and

   (2) conduct or a statement made during compromise negotiations about the claim--except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

Fed. R. Evid. 408(a).

As noted at trial, Plaintiff's testimony did not refer to an offer of settlement or negotiations to settle his benefits.  Plaintiff testified that he was asked to resign his position for one dollar.  Characterizing the letter as an offer of settlement is not reasonable.  Defendant's motion will therefore be denied on this issue.

### v.     The Available Jobs and New Hires Testimony

Lastly, UPS claims that the Court erred by admitting testimony from three non-management UPS employees that there were available jobs at UPS Supinski could perform. According to UPS, because none of these witnesses were ever employed in the Human Resources functions at UPS, the witnesses should have been precluded from offering their speculative testimony about job availability or the hiring status of workers into certain jobs.

Here, the witnesses testified as to information within their personal knowledge as to available positions as UPS.  As such, their testimony as to available jobs and subsequent hires to fill these positions was proper.  The motion for a new trial on this issue will therefore be denied.

## IV. Conclusion

For the above stated reasons, UPS' motion for judgment as a matter of law, or for a new trial, will be denied.

An appropriate order follows.


 July 16, 2012                                        /s/ A. Richard Caputo
Date                                                 A. Richard Caputo
                                                     United States District Judge