## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EDWARD M. SUPINSKI,

    Plaintiff,

        v.

UNITED PARCEL SERVICE, INC.,

    Defendant.

CASE NO. 3:06-CV-00793

(JUDGE CAPUTO)

### MEMORANDUM

Presently before the Court are four post-trial motions filed by Plaintiff Edward Supinski ("Supinski") and one post-trial motion filed by Defendant United Parcel Service, Inc. ("UPS"). For the reasons that follow, Supinski's Motion for Attorneys' Fees (Doc. 290) and Motion for Pre-Judgment Interest (Doc. 300) will be granted in part, while his Motion for Defense Counsels' Time Records and Billing Invoices and Statements (Doc. 291) and Motion for Negative Tax Implications (Doc. 305) will be denied. Furthermore, because UPS' proposed supersedeas bond provides adequate security for Supinski's judgment in this case, UPS' Motion for Bond Approval (Doc. 351) will be granted.

### I. Background

On February 17, 2012, a jury found that UPS failed to accommodate Supinski and retaliated against him in violation of the Americans with Disabilities Act ("ADA") and Pennsylvania Human Relations Act ("PHRA"). The jury awarded Supinski $280,000 in compensatory damages. UPS was ordered to reinstate Supinski, restore his pension to what it would have been if not for its conduct, and to provide him with back pay in the

amount of $342,798.40.  UPS reinstated Mr. Supinski on March 20, 2012, and it credited his pension account with $128,809.94 on May 3, 2012.  Supinski now seeks recovery of his attorneys' fees from UPS.  Furthermore, Supinski requests that the judgment be molded to include an award of pre-judgment interest and an additional monetary sum to compensate him for the increased tax burden the back pay award may create.  UPS opposes Supinski's motions and requests that execution of the monetary judgment be stayed pursuant to Rule 62(d) of the Federal Rules of Civil Procedure.  The motions have been fully briefed and are now ready for disposition.

## II. Post-Trial Motions

### A.    Motion for Attorneys' Fees (Doc. 290)

As the prevailing party, Supinski has requested attorneys' fees and costs in the amount of $272,208.93. (Docs. 290; 358.)  Supinski also suggests that the award be enhanced by fifty percent (50%).  The Court will reduce the attorneys' fees because the requested hourly rate is too high.

Under the ADA, the Court, in its discretion, may award the prevailing party a reasonable attorneys' fee, including litigation expenses and costs. *See* 42 U.S.C.A. § 12205.  In ADA cases, fee awards are "calculated by multiplying 'the number of hours reasonably expended on the litigation ... by a reasonably hourly rate.'" *Bjorklund v. Phila. Housing Auth.*, 118 F. App'x 624, 626 (3d Cir. 2004) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed.2d 40 (1983)).  "In calculating what constitutes a reasonable number of hours, courts exclude hours that are 'excessive, redundant, or otherwise unnecessary,' insufficiently documented, or that were 'spent litigating claims on which the party did not succeed and that were distinct in all respects from' claims on which

the party did succeed.'" *Id*. (quoting *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (internal citations omitted)).

A reasonable hourly rate is "calculated according to the prevailing market rates in the relevant community." *Rode*, 892 F.2d at 1183.  The court "should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Maldonado v. Houston*, 256 F.3d 181, 184 (3d Cir. 2001) (internal citations omitted).  The prevailing party bears the burden of establishing that the requested rate meets this standard. *Id*. (internal citations omitted).

However, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry. . . other considerations that may lead the district court to adjust the fee upward or downward." *Hensley*, 461 U.S. at 434.  Specifically, the Court may look at twelve factors:

(1)     the time and labor required;

(2)     the novelty and difficulty of the questions;

(3)     the skill requisite to perform the legal service properly;

(4)      the preclusion of other employment by the attorney due to acceptance of the case;

(5)      the customary fee;

(6)     whether the fee is fixed or contingent;

(7)      time limitations imposed by the client or the circumstances;

(8)      the amount involved and the results obtained;

(9)      the experience, reputation, and ability of the attorneys;

(10)    the "undesirability" of the case;

(11)   the nature and length of the professional relationship with the client;

(12)    awards in similar cases;

*Hensley*, 461 U.S. at 430, n.3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974)).

Weighing the results obtained:

Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.

*Hensley*, 461 U.S. at 435.

Here, the Court finds the $300.00 hourly rate requested by Plaintiff's counsel, Cynthia L. Pollick , Esq., unreasonable.  Outside of counsel's own affidavit, Plaintiff has not submitted any evidence supporting this figure.  Furthermore, Plaintiff, by simply pointing to a single case in this district where a $300.00 hourly rate was awarded has not satisfied his burden of establishing this as the market rate in the community.  Nevertheless, Ms. Pollick's hourly rate should be increased from the $225.00 suggested by UPS based on her experience in civil rights and employment discrimination cases.  Accordingly, the Court finds $250.00 a reasonable hourly rate for Ms. Pollick in this case.

UPS has also raised specific objections to certain items requested by Supinski. "[O]nce the opposing party has made a specific objection, the burden is on the prevailing party to justify the size of its request." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 711 (3d Cir. 2005).  Based on UPS' objections, Plaintiff's award will be reduced as folllows:

4

### 1.    Unnecessary Counsel Time

UPS seeks to reduce Ms. Pollick's fees by 4.8 hours for time spent preparing unnecessary motions and correspondences not properly chargeable to UPS.  The Court agrees with UPS that Plaintiff may not recover time for duplicate entries, for preparing baseless motions, or for traveling to her office to take a deposition (even if it was on a Saturday).  As such, these 4.8 hours will not be considered in determining Plaintiff's fee award.

### 2.    Counsel and Legal Assistant Travel

UPS requests Ms. Pollick's 19.9 hours in travel time be reduced by fifty percent (50%) to 9.95 hours and her legal assistant's travel time also be cut in half to 3.4 hours.  To determine whether an attorney may be compensated for travel time, the Court must look at the practice of the local community. *See Interfaith*, 426 F.3d at 711.  While Plaintiff has attached a single time record from a different case where an attorney was awarded his full travel time, the Court does not believe that this alone satisfies Plaintiff's burden of establishing that the practice in the local community is to bill clients full rate for travel time.  As such, Ms. Pollick and her legal assistant's travel time will be reduced by fifty percent (50%).

### 3.    Unnecessary and Duplicative Costs

UPS correctly identifies that Plaintiff's supplemental fee declaration contains $431.16 that his counsel already requested in his original motion.  As such, these costs will not be awarded.  Moreover, Plaintiff is not entitled to recover the witness fees paid to witnesses that did not testify at trial because they did not contribute to the successful outcome of Plaintiff's case.  Thus, the costs will be reduced by the $212.00 to account for these fees.

Based on the foregoing, Plaintiff is entitled to $229,523.27 in fees and costs.  This sum is comprised of $166,412.50 for Ms. Pollick's fees (665.65 hours x $250.00), $31,057.5 for legal assistant fees (414.1 hours x $75.00), $24,870.00 in legal researcher fees (248.7 hours x $100.00), and $7,183.27 in costs.   And, because this is not a "rare" and "exceptional" case, *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S. Ct. 3088, 92 L. Ed. 2d 439 (1986), Plaintiff's request for an upward enhancement of the fee award will be denied.[1]

**B.      Motion for Defense Counsels' Time Records and Billing Invoices (Doc. 291)**

Supinski's request for defense counsels' time records and billing invoices and statements will be denied.  In this case, none of the objections to Plaintiff's motion for attorneys' fees challenge specific time spent on particular tasks as excessive.[2]  Instead, UPS' objections predominantly focus on whether the hourly rate sought by Plaintiff's counsel is reasonable.  As such, the number of hours UPS' counsel spent in litigating this case is irrelevant to the hourly rate reasonable for Plaintiff's counsel's services.  Plaintiff's motion will therefore be denied.

---

[1]      Plaintiff's sole argument for an upward fee enhancement is based on the parties' attempt to settle this matter prior to trial.  As settlement negotiations are only one factor that may be considered by the Court in the award of fees, and Plaintiff has failed to address in detail the other factors a court may consider in adjusting fee awards, an upward enhancement of the fee award is not appropriate in this case. *See Lohman v. Duryea Borough*, 574 F.3d 163, 169 (3d Cir. 2009) ("we hold only that settlement negotiations may be relevant in measuring success, and, if so, *are clearly only* <u>*one factor*</u> *to be considered in the award of fees*").

[2]      Contrary to Plaintiff's assertion, UPS has not "challenged the extent of hours worked by plaintiff's counsel."

**C.     Motion for Pre-Judgment Interest on Backpay Award (Doc. 300)**

Supinski has filed a motion requesting pre-judgment interest on the back pay award. The decision to award pre-judgment interest is "committed to the sound discretion of the district court." *Green v. USX Corp.*, 843 F.2d 1511, 1530 (3d Cir. 1988), *vacated and remanded on other grounds*, 490 U.S. 1103, 109 S. Ct. 3151, 104 L. Ed. 2d 1015 (1989). "The award of pre-judgment interest is appropriate in ADA cases." *Herman v. City of Allentown*, 985 F. Supp. 569, 581 (E.D. Pa. 1997) (citing *Corbett v. Nat'l Prods. Co.*, No. 94-2652, 1995 WL 284248, at *5 (E.D. Pa. May 9, 1995)). In cases where the plaintiff has been awarded pre-judgment interest on back pay, this Court has relied on the IRS overpayment rates in 26 U.S.C. § 6621(a)(1). *See Lohman v. Duryea Borough*, No. 05-1423, 2008 WL 2697309, at *3 (M.D. Pa. July 1, 2008) (citing *Taylor v. Cent. Pa. Drug & Alcholol Servs. Corp.*, 890 F. Supp. 360 (M.D. Pa. 1995)).

Here, an award of pre-judgment interest is necessary to make Supinski whole. The Court will calculate the simple interest owed using the IRS overpayment rates. *Id*. "To calculate the appropriate amount of pre-judgment interest, the Court will multiply the interest rate in effect during the relevant quarter by the amount owed by the defendant." *Id*.[3] The pre-judgment interest on the back pay in this case will be calculated from November 11, 2002, when UPS failed to first accommodate Supinski, until February 17, 2012, the date of the verdict.

---

[3]     Due to the number of quarters for which Plaintiff is entitled to prejudgment interest, when the overpayment rates remained constant in consecutive quarters, the time period listed in the following chart is in multiples of three months. Thus, for the nine-month period from January 1, 2003 until September 30, 2003, the prejudgment interest owed is calculated by multiplying the total back pay owed by the interest rate by .75 (9/12).

| Time Period | Overpayment Rate | Months | Amount Owed |
|---|---|---|---|
| November 11, 2002- November 30, 2002 | 6% | 20 days | $1,127.01 |
| December 1, 2002- December 31, 2002 | 6% | 1 | $1713.99 |
| January 1, 2003- September 30, 2003 | 5% | 9 | $12,854.94 |
| October 1, 2003- March 31, 2004 | 4% | 6 | $6,855.97 |
| April 1, 2004- June 30, 2004 | 5% | 3 | $4,284.98 |
| July 1, 2004- September 30, 2004 | 4% | 3 | $3,427.98 |
| October 1, 2004- March 31, 2005 | 5% | 6 | $8,569.96 |
| April 1, 2005- September 30, 2005 | 6% | 6 | $10,283.95 |
| October 1, 2005- June 30, 2006 | 7% | 9 | $17,996.92 |
| July 1, 2006- December 31, 2007 | 8% | 18 | $41,135.81 |
| January 1, 2008- March 31, 2008 | 7% | 3 | $5,998.97 |
| April 1, 2008- June 30, 2008 | 6% | 3 | $5,141.98 |
| July 1, 2008- September 30, 2008 | 5% | 3 | $4,284.98 |
| October 1, 2008- December 31, 2008 | 6% | 3 | $5,141.98 |
| January 1, 2009- March 31, 2009 | 5% | 3 | $4,284.98 |
| April 1, 2009- December 31, 2010 | 4% | 21 | $23,995.89 |
| January 1, 2011- March 31, 2011 | 3% | 3 | $2,570.99 |
| April 1, 2011- September 30, 2011 | 4% | 6 | $6,855.97 |
| October 1, 2011- January 31, 2012 | 3% | 4 | $3,427.98 |
| February 1, 2012- February 17, 2012 | 3% | 17 days | $477.67 |
| | | **TOTAL** | **$170,432.89** |

Based on the foregoing, the Court will amend the judgment to include pre-judgment interest against UPS in the amount of $170,432.89.

**D.      Motion for Negative Tax Implications (Doc. 305)**

Supinski also requests the Court to award an additional monetary sum to compensate him for the increased tax burden the back pay award will create.  UPS opposes Plaintiff's request because there are no facts in the record upon which the Court could rely on in attempting to ascertain a non-speculative additional amount to award Plaintiff because of tax implications.

"A chief remedial purpose of employment discrimination statutes such as the ADA is 'to make persons whole for injuries suffered on account of unlawful employment discrimination.'" *Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 440 (3d Cir. 2009) (quoting *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 418, 95 S. Ct. 2362, 45 L. Ed. 2d 280 (1975)).  Thus, "in exercising its discretion to fashion a remedy, district courts should, *inter alia*, endeavor 'to restore the employee to the economic *status quo* that would exist but for the employer's conduct.'" *Id*. (quoting *In re Continental Airlines*, 125 F.3d 120, 135 (3d Cir. 1997)).

In light of those principles, the Third Circuit has held that a "district court may, pursuant to its broad equitable powers granted by the ADA, award a prevailing employee an additional sum of money to compensate for the increased tax burden a back pay award may create." *Id*. at 441-42.  Thus, awards of pre-judgment interest and/or additional compensation to the prevailing party for the increased tax burden of a back pay award "may be necessary to achieve complete restoration of the prevailing employee's economic *status*

*quo*." *Id*. at 442.   Nevertheless, "a prevailing plaintiff in discrimination cases is [not] presumptively entitled to an additional award to offset tax consequences above the amount to which she would otherwise be entitled.  Employees will continue to bear the burden to show the extent of the injury they have suffered." *Id*. at 443.

Plaintiff relies on *McKenna v. City of Phila.*, 636 F.2d 446, 467, (E.D. Pa. 2009) and *Cange v. Phila. Parking Auth.*, No. 08-3480, 2010 WL 365468 (E.D. Pa. Feb. 1, 2010) in support of his argument for additional compensation to offset the tax implications of the back pay award.  In *McKenna*, the plaintiff argued that "he might seek to have his award adjusted to reflect the tax impact of receiving his back pay in lump sum." *McKenna*, 636 F.3d at 467.  The district court granted the plaintiff ten days to file a motion requesting such an adjustment. *See id*.  However, the Plaintiff filed a motion to withdraw tax relief impact, without prejudice, pending an appeal to the Third Circuit. *See* Plfs.' Notice to Withdraw Tax Relief Impact, *McKenna v. City of Phila.*, No. 98-5835 (E.D. Pa. July 10, 2009), ECF No. 239.  And, in the *Cange* opinion relied upon by Supinski, the district court denied the plaintiff's pretrial request to present testimony on negative tax consequences at trial. *See Cange*, 2010 WL 365468, at *11-*12.  The district court concluded that if the plaintiff was successful at trial then she could submit evidence in support of her claim for negative tax consequences. *See id*.  However, after the case proceeded to trial and the jury could not reach a unanimous verdict, the district court entered judgment as a matter of law for the defendant. *See Cange*, 2010 WL 1254337 (E.D. Pa. Apr. 1, 2010) *aff'd* 451 F. App'x 210 (3d Cir. 2011).  Thus, the district court in *Cange* was never required to reach a decision on whether to compensate the plaintiff for the negative tax consequences of a back pay award.

Conversely, UPS asserts that this Court should follow Judge Pratter's decision in *Argue v. David Davis Enter., Inc.*, No. 02-9521, 2009 WL 750197, at *26-*27 (E.D. Pa. Mar.

20, 2009).  In *Argue*, after the plaintiff prevailed at trial, he sought additional compensation for the negative tax implications of the back pay award.  *See id*.  In denying the motion, the court concluded:

> Mr. Argue has failed to present the Court with a reliable estimate of the negative income tax consequences of his lump sum award, let alone equitable arguments compelling such an award under the facts of this case. Because Mr. Argue has failed to carry his burden in proving to the Court that he was entitled to such an award and that the amount requested is not speculative [his motion] is denied.

*Id*. at *28.

The Court finds this case to be more squarely aligned with *Argue* than *Cange* or *McKenna*.  And, based on the lack of evidence presented by Plaintiff in support of his request for negative tax implications, the Court is persuaded to follow Judge Pratter's analysis in *Argue*.  Here, the only evidence supplied by Plaintiff in support of his request is a one-page tax computation chart prepared by his counsel.  Based on the evidence presented, the Court is unable to conclude that the amount sought by Plaintiff is not speculative.  Essentially, Plaintiff's request for additional compensation to offset any negative tax implications assumes that he is presumptively entitled to an additional award simply because he was the prevailing party.  However, as the Third Circuit in *Eshelman* expressly stated that a prevailing party in an employment discrimination case is not presumptively entitled to a negative tax implication award and must bear the burden to show the extent of the injuries he claims to have suffered, *see Eshelman*, 554 F.3d at 443, the Court will deny Plaintiff's motion because of the lack of reliable evidence in the record to allow the Court to make a non-speculative negative tax implication award.

**E.  Motion for Bond (Doc. 351)**

Lastly, UPS has filed a motion for approval of a supersedeas bond and stay of execution of judgment pursuant to Rule 62(d) of the Federal Rules of Civil Procedure.  Rule

62(d) provides:

> If an appeal is taken, the appellant may obtain a stay by supersedeas bond, except in an action described in Rule 62(a)(1) or (2). The bond may be given upon or after filing the notice of appeal or after obtaining the order allowing the appeal. The stay takes effect when the court approves the bond.

Fed. R. Civ. P. 62(d).  The stay provisions of Rule 62(d) are "automatic." *Becker v. United States*, 451 U.S. 1306, 1308, 101 S. Ct. 3161, 68 L. Ed. 2d 828 (1981).  Thus, "Rule 62(d) entitles a party who files a satisfactory supersedeas bond to a stay of money judgment as a matter of right." *Arban v. West Publ'g Corp.*, 345 F.3d 390, 409 (6th Cir. 2003) (citing *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 759 (D.C. Cir. 1980)); *see also Cohen v. Metro. Life Ins. Co.*, 334 F. App'x 375, 378 (2d Cir. 2009) ("Rule 62(d) provides that an appellant may obtain a stay pending appeal, as of right, by posting a supersedeas bond").  And, under Rule 62(b), "'the bond should normally be sufficient in amount to satisfy the judgment in full.'" *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, No. 01-485, 2010 WL 1329050, at *1 (M.D. Pa. Mar. 29, 2010) (quoting *Schreiber v. Kellogg*, 839 F. Supp. 1157, 1159 (E.D. Pa. 1993)).

Here, in light of the resolution of Plaintiff's motions for attorneys' fees, pre-judgment interest, and negative tax implications, the Court finds UPS' proposed supersedeas bond of $1,440,176.77 to be more than adequate security for Plaintiff's judgment.  And, because the supersedeas bond provides sufficient security in this case, UPS is entitled to a stay of the money judgment as a matter of right.  As such, the Court will approve UPS' proposed bond and the proceedings to execute upon the judgment in this matter will be stayed pending the resolution of UPS' appeal.

### III. Conclusion

For the above stated reasons, Plaintiff's motions for attorneys' fees and pre-judgment interest will be granted in part, Plaintiff's motions for defense counsels' time records and

negative tax implications will be denied, and Defendant's motion for bond approval will be granted.

      An appropriate order follows.


 July 16, 2012                                           /s/ A. Richard Caputo    
Date                                                 A. Richard Caputo
                                                     United States District Judge